CONTINENTAL BANK & TRUST COMPANY OF NEW YORK, as Successor Trustee under a Trust Mortgage Dated June 12, 1925, Made by W. A. R. Realty Corporation, Respondent, *v.* W. A. R. REALTY CORPORATION et al., Appellants, et al., Defendants.

First Department, April 9, 1943.

*Karl W. Kirchwey* of counsel (*Martin Lippman* and *Irving M. Engel* with him on the brief; *McLaughlin & Stern,* attorneys for W. A. R. Realty Corporation and Bardlom Corporation; *Konta, Kirchwey & Engel,* attorneys for William Randolph Hearst), for appellants.

*John W. Kelly* of counsel (*Frank J. Podesta* and *Benjamin Rockmore* with him on the brief; *Wise, Shepard, Houghton & Lebett,* attorneys), for respondent.

Townley, J. This action is brought by the trustee of a mortgage on New York real estate to enforce collection of an outstanding principal amount of coupon gold bonds totaling $4,844,750. The defendant W. A. R. Realty Corporation is the mortgagor. The defendant William Randolph Hearst guaranteed the payment of each individual bond. The answer of the defendant Hearst denies, as of the date of his answer, that bonds in the amount stated are outstanding. He also pleads three affirmative defenses.

By the first defense it is pleaded that the present market value of the property is $4,112,500 and that because of a certain contract made between the defendants and others including the plaintiff, this value is the basis for fixing any deficiency judgment against the mortgagor and defendant Hearst.

As a second, partial defense and offset, it is alleged that of the $4,844,750 of bonds referred to in the complaint as outstanding, bonds aggregating $837,300 have been duly surrendered to and cancelled by the mortgagor and that the owners of said bonds have duly released and discharged the mortgagor and defendant Hearst from all liability thereon. Wherefore, it is alleged, the bonds so cancelled are no longer outstanding or secured by the mortgage and are no longer subject to any guarantee by the defendant Hearst.

As a third, complete defense and offset it is alleged that the total amount due under the outstanding bonds subject to computation under the agreement of May 9, 1941, after giving effect to the credits provided for by the agreement, is less than the fair and reasonable market value of the mortgaged premises as fixed and determined by the referee.

The corporate defendants set up substantially the same defenses. The replies served by the plaintiff answer these defenses with counter-defenses. The substance of the first of these defenses is that neither the mortgagor nor defendant Hearst who were in default under the first mortgage had the right to acquire, cancel or satisfy $837,300 worth of bonds which were outstanding at the time of the default.

The trust mortgage itself provided that all bonds or coupons which were redeemed by the company or by any guarantor or surety should not be re-issued but must forthwith be cancelled. It also provided that the mortgagor is not entitled to the protection of the security of the mortgage even though it holds bonds.

These bonds are negotiable instruments. They are governed by the Negotiable Instruments Law which provides (§ 200) that a negotiable instrument is discharged by the intentional cancellation thereof or when the principal debtor becomes the holder of the instrument at or after maturity in his own right. There can be no question that there has been a legal cancellation of the amount of the bonds which came into the hands of the mortgagor. Section 201 of the Negotiable Instruments Law provides that a person secondarily liable on an instrument is discharged by an act which discharges the instrument. Each bond was separately guaranteed by defendant Hearst. To the extent, therefore, that the bonds have been discharged, it is quite clear that the mortgage debt has been reduced and the obligation of the mortgagor has similarly been reduced *pro tanto*. There is no rule of law which prevents the payment of obligations after default either in whole or in part. The first defense in the replies is, therefore, insufficient.

The second defense sets out the facts of a settlement agreement of the then pending foreclosure action. This settlement agreement provided, among other things, that the present amended complaint should be served and that a referee should be appointed in this foreclosure proceeding to compute as of certain specified dates the amount due under the mortgage. It is alleged after recital of the agreement that " by reason of certain representations made to plaintiff on behalf of defendants, William Randolph Hearst, W. A. R. Realty Corporation

and Bardlom Corporation, and of certain understandings and agreements had between the duly authorized representatives of the plaintiff and of other bondholders on one hand, and the duly authorized representatives or agents of said defendants on the other hand, it was understood and agreed between the parties to the agreement and stipulation dated May 9, 1941, that in computing the amount of the deficiency judgment to be entered against the defendants, William Randolph Hearst and W. A. R. Realty Corporation, the amount of said deficiency judgment was to be computed and determined on the basis of there being $4,844,750 principal amount of bonds outstanding.'' It is then alleged that the defendants concealed their purpose of acquiring, cancelling and discharging the bonds which have been retired and that because of these representations, the plaintiff has renounced and surrendered valuable rights and claims to its legal damage and prejudice. The conclusion is that the defendants are estopped to deny that the deficiency judgment must be computed on the basis of $4,844,750 of bonds outstanding.

If any representation is pleaded, it seems to be a promissory representation to the effect that in the future a certain number of bonds would be outstanding. There was no promise to pay a deficiency judgment on the basis of the sum claimed. One will search the agreement in vain for any such promise. Indeed, had it been the intention of the defendant Hearst to make any such promise, there would have been no need for any computation or for any further foreclosure action so far as defendant Hearst was concerned. It was known what was the value of the bonds that were outstanding on the date of the agreement. The necessity for a computation of the amount due on the mortgage arose from the very fact that it was necessarily uncertain what bonds would be outstanding at the time of the computation.

The agreement pleaded, if it was ever made, should have been integrated in the written agreement. The parol evidence rule provides that there can be no claim as to any oral part of a contract which is contradictory of the part that has been reduced to writing. (*Bogardus* v. *N. Y. Life Ins. Co.*, 101 N. Y. 328, 337; *Mitchill* v. *Lath*, 247 N. Y. 377; *White* v. *Ashton*, 51 N. Y. 280.)

As for the suggestion that there is an estoppel because of some fraudulent purpose to acquire and cancel bonds, we may say that there was no relation of trust and confidence existing among the makers of this agreement. The parol evidence rule cannot be evaded or set aside by the device of claiming an estoppel. To ground an estoppel a representation must concern existing facts and not a mere promise omitted from a written

contract. (*White* v. *Ashton, supra; Corse* v. *Peck,* 102 N. Y. 513.)

Defendants' purpose to discharge a part of the debt was a legitimate and even laudable purpose. No damage or prejudice can in fact be shown since the value of the property has been found by judicial holding to be equal to one hundred per cent of the value of the presently outstanding bonds. The second defense of the replies is, therefore, insufficient in law.

In the third defense of its replies the plaintiff charges an unlawful conspiracy between the defendants to relieve defendant Hearst from his just and lawful obligation to pay a deficiency judgment in excess of $800,000. It is alleged that the conspiracy was furthered by wilfully defaulting on the bonds, by acquiring bonds at depressed prices, and by concealing from the plaintiff that defendants were acquiring bonds with the express purpose of cancelling and retiring and discharging the same. The conclusion is that it would be unconscionable to permit the liability of the defendant Hearst to be annulled and extinguished.

It thus appears that the allegations of the third defense are merely the facts of the first two defenses realleged with the charge that they were done in furtherance of an unlawful conspiracy. Since the facts of the first and second defenses merely state proceedings by the defendants which were lawful in themselves, the charge of conspiracy is meaningless. As was said in *Rhodes* v. *Ocean Accident & Guarantee Corp., Ltd.* (235 App. Div. 340): " An action does not lie when two or more persons agree to do a lawful act in a lawful manner and cause damage thereby, even though they may have acted with a malicious motive."

In the present case it is obvious that there is no showing that the acts done have resulted in any damage or injury to the plaintiff. The defendant Hearst's obligation under his contract was to pay his deficiency judgment measured by the difference between the market value of the mortgaged property and the balance of the mortgage debt remaining unpaid. If the defendants were able to reduce that debt by any lawful means, it was their right and privilege to do so. To punish these acts as part of a " fraudulent conspiracy " is equivalent to denying the right to reduce the debt. The breaking of the original contract of guaranty was not a tort. (*Baumgarten* v. *Alliance Assur. Co.,* 159 F. 275, 278; *Mercantile Factors Corp.* v. *Warner Bros. Pictures, Inc.,* 215 App. Div. 530, affd. 244 N. Y. 504; *Brick* v. *Cohn-Hall Marx Co.,* 276 N. Y. 259.) We find no merit in the matters set up in the replies.

The orders should be reversed, each with ten dollars costs and disbursements and the motions to dismiss the defenses contained in the replies granted.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Orders unanimously reversed, each with ten dollars costs and disbursements and the motions to dismiss the defenses contained in the replies granted.