[Sac. No. 6687. In Bank. Aug. 10, 1956.]

HOWARD A. CLARK, Appellant, v. DEAN S. LESHER et al., Respondents.

H. A. Savage, Stutsman, Hackett & Nagel and J. J. Nagel for Appellant.

Roy E. Wolfe, in pro. per., Green, Green, Plumley & Bartow, Green, Green & Plumley, Denslow Green, S. Everett Phillips and Everett L. Coffee for Respondents.

GIBSON, C. J.—Clark sought to recover damages from defendants Lesher, Halcomb and Wolfe, alleging that they fraudulently conspired to destroy the good will of a newspaper in which he had an interest. Defendants denied the conspiracy and, by way of affirmative defenses, alleged that the issues tendered by the complaint are res judicata, that Clark had assigned his cause of action to Lesher, and that he is estopped to deny the transfer. The court ordered that the case be tried first on the special defenses, and the jury returned a verdict thereon for all defendants. Judgment was entered accordingly, and Clark has appealed.

For a number of years, Clark and his father owned and published a newspaper in Madera as partners. The father died in September of 1944, leaving his one-half interest in the partnership to be equally divided among Clark and two other children. Clark remained in possession of the newspaper and continued to publish it. The other two heirs sold their interests to Lesher.

R. S. Jay was appointed administrator of the estate, and an action entitled *Jay* v. *Clark* was instituted in February of

1945 in which it was alleged that Clark had refused to wind up the partnership or to render an accounting. In that action the trial court found against Clark and entered an interlocutory judgment ordering him to render an accounting and appointing a receiver to take possession of the assets of the partnership and to operate the business until it could be sold as a going concern. In June of 1948, following affirmance of this judgment (*Jay* v. *Clark*, 85 Cal.App.2d 88 [192 P.2d 462]), Wolfe was appointed receiver in place of the one originally selected, and he took possession of the newspaper from Clark. Wolfe petitioned the court for instructions, stating that there were not sufficient funds on hand to continue operations. The court ordered him to discontinue publication within 10 days, to publish a notice of sale for two weeks, and to sell the business within 30 days thereafter. In August, the newspaper was sold to Lesher for $30,750, and, after a hearing at which no objections were made, the court confirmed the sale.

In January of 1949, Wolfe, as receiver, brought an action entitled *Wolfe* v. *Clark and Lesher* to quiet title to the proceeds of the sale and to certain items of personal property, including a life insurance policy. Clark filed an answer, asserting his ownership of the insurance policy and claiming a right to the proceeds of sale in an amount representing his partnership interest and compensation for services rendered to the newspaper. Lesher denied that Clark was entitled to any money and alleged that the policy was an asset of the business purchased by him. In June of 1949, while the action was pending, Clark and his wife executed an assignment transferring to Lesher all their interests in the partnership and the estate. The assignment was made as consideration for entry of judgment in a form stipulated by the parties which recited the terms of the assignment and ordered Wolfe to pay Clark $5,000.

Wolfe reported to the court in *Jay* v. *Clark* regarding the agreement reached by the parties, and an order discharging him as receiver was then entered in that action.

The present action was commenced by Clark about two weeks after entry of the stipulated judgment in *Wolfe* v. *Clark and Lesher*. The allegations of the complaint may be summarized as follows: Upon the death of Clark's father, Lesher, who owned a newspaper in an adjoining county, bought one in Madera and appointed Halcomb as manager. Lesher and Halcomb conspired to eliminate Clark's newspaper as a competitor, and, in furtherance of the conspiracy, Lesher

purchased the rights of the two children who, in addition to Clark, inherited the deceased's partnership interest in the newspaper. Without the knowledge or consent of Jay, Lesher brought the action entitled *Jay* v. *Clark* in the name of the administrator for the purpose of ousting Clark from possession of the newspaper. After entry of the interlocutory judgment in *Jay* v. *Clark,* Lesher and Halcomb approached Wolfe, telling him that they would arrange to have him appointed as receiver of the partnership, in which event he was to discontinue the publication of the newspaper. Wolfe agreed to the plan, and Lesher and Halcomb procured the order appointing Wolfe as receiver, without the knowledge or consent of the administrator and without notice to Clark. Although the interlocutory judgment directed that the business be sold as a going concern, Lesher, Halcomb and Wolfe conspired to obtain an order authorizing cessation of publication. In an ex parte proceeding conducted without securing the consent of the administrator and without giving notice to Clark, Wolfe, by knowingly misrepresenting that there were not sufficient funds to continue operations, procured the order directing that publication of the newspaper be discontinued within 10 days, that notice of sale be given for two weeks, and that the business be then sold within 30 days. The newspaper could have been sold to best advantage while being published and circulated, and defendants knew that cessation of its publication would cause irreparable damage to its owners. When publication ceased, there was a total destruction of the good will of the newspaper. Immediately thereafter, advertisement and subscription rates of Lesher's newspaper were raised. In collaboration with Halcomb and Wolfe, Lesher entered a bid to buy the newspaper, offering to raise any other bid by $200. Lesher's bid was accepted, and the assets of the newspaper were delivered to him.

A general demurrer to the complaint was sustained without leave to amend, and judgment was entered accordingly. On appeal, the judgment was reversed on the ground that the complaint stated a cause of action in tort for fraudulent conspiracy to destroy and depreciate the good will of the partnership. (*Clark* v. *Lesher,* 106 Cal.App.2d 403 [235 P.2d 71].) Defendants answered, denying the fraudulent conspiracy and alleging affirmative defenses. As we have seen, the case then proceeded to trial on the special defenses, and the jury returned a verdict for defendants.

### Was Clark's Cause of Action Res Judicata?

One of the special defenses relied on in support of the judgment is that the issues tendered by the complaint are res judicata. This defense was left entirely to the jury without any guidance regarding the legal force and effect of the prior actions.[1] There can be no doubt that this was error, but defendants argue that plaintiff was not prejudiced because, they assert, the record shows as a matter of law that the issues raised here are res judicata. An analysis of the judgment rolls in the prior actions shows, however, that this contention is unsound.

In its primary aspect the doctrine of res judicata operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. (See *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636 [134 P.2d 242].) It is clear and, indeed, conceded, that the two prior actions described above—the accounting suit by Jay as administrator of the estate of Clark, and the quiet title suit by Wolfe as receiver of the partnership—are based upon entirely different causes of action from plaintiff's action for damages for conspiracy to defraud.

In its secondary aspect res judicata has a limited application to a second suit between the same parties, though based on a different cause of action. The prior judgment is not a complete bar, but it "operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." (*Todhunter* v. *Smith*, 219 Cal. 690, 695 [28 P.2d 916].) This aspect of the doctrine of res judicata, now commonly referred to as the doctrine of collateral estoppel, is confined to issues actually litigated. It is not an easy rule to apply, for the term "issue" as used in this connection is difficult to define, and the pleadings and proof in each case must be carefully

---

[1]The court instructed the jury as follows:

"The term 'res adjudicata' is defined as a matter adjudged; a thing judicially acted upon or decided; a thing or matter settled by judgment. . . ."

"That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto. . . ."

"You are hereby instructed that if an issue has been determined in a former action, it is binding notwithstanding the parties litigant may have omitted to urge for or against it matters which, if urged, would have produced an opposite result. In other words, when an issue has been litigated, all inquiry respecting the same is foreclosed, not only as to matters heard but also as to matters that could have been heard in support of or in opposition thereto."

scrutinized to determine whether a particular issue was raised even though some legal theory, argument or "matter" relating to the issue was not expressly mentioned or asserted. (See discussion, *Sutphin* v. *Speik,* 15 Cal.2d 195 [99 P.2d 652, 101 P.2d 497] ; *Pacific Mut. Life Ins. Co.* v. *McConnell,* 44 Cal. 2d 715, 724 [285 P.2d 636] ; 3 Witkin, California Procedure, p. 1948 et seq.)

 There is, however, little difficulty in applying the rule in the present case. The first action, by Jay as administrator of the estate of the deceased partner, sought an accounting, sale of partnership assets, payment of debts and distribution of the surplus. The defendant, sued as surviving partner, answered, denying that any sum was due. An interlocutory judgment was rendered in favor of plaintiff, for an accounting from defendant, for the sale of the property and payment of the debts, and for the appointment of a receiver. This judgment determined issues relating entirely to the partnership business, its property and its liabilities. The plaintiff Jay, as administrator, was not even a defendant in the subsequent action by Clark for conspiracy and fraud, and the three defendants in the subsequent fraud action were not parties to Jay's accounting suit. The fraud and conspiracy theory of individual liability of persons not parties would have been completely irrelevant in Jay's action, and the issue was never raised.

 The same is true of the second action by Wolfe as receiver of the partnership. The suit was to quiet title to defendant Clark's claim to assets of the partnership, including the newspaper, and Clark answered alleging a one-half interest in the assets, a claim for compensation for services, and a claim to a life insurance policy. Again the issues related solely to the rights of the parties as partners in the partnership property. The issue of personal liability of Lesher, who filed an answer as a fictitiously named defendant, and of Halcomb, who was not a party, for conspiracy to defraud, was irrelevant and in no way interjected.

 There remains for consideration a special aspect of the doctrine of res judicata which in California is expressed in section 439 of the Code of Civil Procedure: "If the defendant omits to set up a counterclaim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor."

This compulsory counterclaim statute has the obvious purpose of avoiding multiplicity of actions and conflicting judgments. If Clark's claim for damages for conspiracy to defraud, against Lesher, Halcomb and Wolfe, could have been asserted as a counterclaim arising out of the transaction on which the complaint in either of the prior actions was founded, the present suit on that claim is barred.

It is clear, however, that this is not the case. Even if we assume that the same "transaction" was involved in the prior suits and the present action, the parties were not the same in that the plaintiff in each of the prior actions was suing in a representative capacity—Jay as administrator and Wolfe as receiver of the partnership. Thus, an elementary test of a counterclaim, that it can be set up only by a defendant and against a plaintiff between whom a several judgment may be rendered (Code Civ. Proc., § 438), was not met. Neither of the representatives, in the capacity in which he asserted his claim to the partnership assets, could be subjected to a several personal judgment on an individual claim mainly directed against other persons. (See *Garrison* v. *Brown & Sons,* 25 Cal.2d 473, 476 [154 P.2d 377] ; 3 Witkin, California Procedure, p. 1593.) Nor does Clark's claim for money damages against individual defendants "tend to diminish or defeat" the demand for recovery of partnership assets. (See Code Civ. Proc., § 438; *Zainudin* v. *Meizel,* 119 Cal.App.2d 265, 268 [259 P.2d 460].)

It is true that if Clark was aware of his cause of action for conspiracy and fraud at the time of the two prior actions, he might have attempted to set it up by a cross-complaint. This would have involved the bringing in of new parties by order of court, and the court in its discretion could have denied permission on the ground that a complete determination of the controversy concerning the partnership assets did not require a trial of the suit for damages against the new parties. (See *Bracey* v. *Gray,* 65 Cal.App.2d 282, 287 [150 P.2d 564] ; 3 Witkin, California Procedure, p. 1587.) In any event, the choice was in Clark's hands. There is no compulsory cross-complaint statute; the bar of section 439 of the Code of Civil Procedure applies only where the cause of action may properly be pleaded as a counterclaim arising out of the transaction forming the foundation of the complaint. (See *Schrader* v. *Neville,* 34 Cal.2d 112 [207 P.2d 1057].)

### Did the Assignment from Clark to Lesher Transfer the Cause of Action for Fraud?

It was also pleaded as a special defense that the cause of action here asserted by Clark was assigned to Lesher under the agreement which led to the stipulated judgment in the quiet title action. By the terms of the agreement Clark and his wife assigned to Lesher "all of their right, title and interest of every kind and nature in and to the properties in the Estate" and "all claims of every kind, nature, and description that they have heretofore filed against said Estate, or which they might hereafter assert against said Estate," together with "their entire interest in the partnership . . . and in all assets of said partnership." The cause of action, being one for the fraudulent destruction of the good will of the newspaper, arose out of the violation of a right of property, and it was, therefore, assignable and could have been included in the agreement, if the parties so intended. (Civ. Code, § 954; *Offer* v. *Superior Court*, 194 Cal. 114, 121 [228 P. 11]; see *Webb* v. *Pillsbury*, 23 Cal.2d 324, 327 [144 P.2d 1, 150 A.L.R. 504]; cf. *American Trust Co.* v. *California etc. Ins. Co.*, 15 Cal.2d 42, 67 [98 P.2d 497].)

 The case was tried on the theory that the question of whether the cause of action for fraud had been assigned to Lesher was to be determined from the face of the written instrument. Under this theory the construction of the writing was the responsibility of the trial court and not the function of the jury. (*O'Connor* v. *West Sacramento Co.*, 189 Cal. 7, 18 [207 P. 527]; *California Well Drilling Co.* v. *California Midway Oil Co.*, 178 Cal. 337, 341, 343 [177 P. 849]; see *Huebotter* v. *Follett*, 27 Cal.2d 765, 770-771 [167 P.2d 193].) The instructions of the court, however, erroneously left to the jury the legal question of the interpretation of the assignment.[2]

 Defendants urge that the error was not prejudicial, asserting that it can be said as a matter of law that under the terms of the instrument Clark transferred his cause of action

---

[2]The court instructed the jury as follows:
"The Defendants Lesher and Halcomb claim, as their first special defense, that prior to the commencement of this action the Plaintiff transferred, assigned and set over to the Defendant Lesher all of his right, title, and interest in and to the properties in the Estate of George A. Clark, Deceased, and all of his interest in and all of the assets of the partnership of Clark and Clark, doing business as 'Madera Daily Tribune and Mercury,' and all of the assets of the 'Madera Daily Tribune and Mercury,' and that as a result of said transfer and assignment, the Plaintiff has no basis for this action, since the cause of action, if any exists, actually belongs to the Defendant Lesher, and not to the Plaintiff.''

to Lesher. We do not agree. The assignment is reasonably subject to opposed constructions with respect to whether the parties intended to include the cause of action for fraud. The broad language used might be fairly construed to mean that Clark parted with all rights arising out of his connection with the newspaper, including the right to recover for fraudulent injury to its good will. On the other hand, the assignment does not mention the cause of action for fraud or any claim against Lesher or the other defendants, and the reference to the "assets" of the newspaper might be understood as applying merely to items of property involved in operating the business and not to a right to recover for prior tortious injury to such property. Evidence relating to the negotiations which preceded execution of the assignment was introduced, but it was limited by the trial court to the separate defense that Clark was estopped to deny the transfer. The evidence could properly have been received as an aid to the construction of the instrument, but the court ruled that it was inadmissible for that purpose. As we shall see, the extrinsic evidence was conflicting, and, since the intention of the parties to the agreement may be determined by resolving the conflicts, we should not attempt to construe the assignment as a matter of law.

### Was Clark Estopped to Deny Transfer of the Cause of Action?

Lesher and Halcomb rely on the defense that Clark is estopped to deny a transfer of the cause of action for fraud on the ground that he was guilty of a misleading course of conduct in the negotiations preceding the agreement. There is evidence that Clark's attorney orally represented to Lesher that Clark would accept $5,000 in settlement of all claims of every kind including "anything" that might or might not be in existence, and Lesher testified that he would not have entered into the agreement but for these representations.[3] Clark's attorney testified that he did not agree to settle anything which was not specifically set forth in the assignment and that he refused to stipulate to a release of all matters. Clark testified that he believed he had a cause of action for fraud and that he instructed his attorney that, if he had a claim, he did not want to lose it by a settlement. In limiting

---

[3]Testimony of Clark to the effect that he would not have executed the assignment had it contained a provision for release of the cause of action for fraud was stricken on the ground that it was not material to the defense of estoppel.

this evidence to the defense of estoppel, the court necessarily took the position that the assignment was clear and unambiguous and that allowing the evidence to be used for the purpose of interpreting the instrument would violate the parol evidence rule. In view of our conclusion that the assignment is ambiguous and that the extrinsic evidence was admissible to show the intention of the parties to the agreement, we need not determine whether the court, having assumed that there was no ambiguity, erred in receiving the evidence in connection with the defense of estoppel. (See e.g., *Connecticut Fire Ins. Co.* v. *Buchanan*, 141 F. 877, 897 [73 C.C.A. 111, 4 L.R.A. N.S. 758]; *Continental Bank & Trust Co.* v. *W. A. R. Realty Corp.*, 265 App.Div. 729 [40 N.Y.S.2d 854]; 20 Am.Jur., p. 962.)

 Halcomb was not a party to the assignment agreement, and the consideration for it was paid out of receivership assets in which he had no interest. There is no showing that he relied to his injury on Clark's conduct in the negotiations preceding the assignment, and he is, therefore, precluded from resorting to estoppel. (*Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.*, 1 Cal.2d 121, 128 [34 P.2d 139].)

 Wolfe did not plead the defense of estoppel, and, it is, therefore, not available to him. We have no way of knowing whether the jury resolved the conflicting extrinsic evidence in favor of Lesher and based its verdict on the defense of estoppel or whether the verdict was based on one of the other defenses.[4] The jury may have found against Lesher on the evidence relating to estoppel and may have based its general verdict on a conclusion that the issues tendered by the complaint were res judicata or that Clark's cause of action was transferred by the written assignment. The errors committed by the court in submitting to the jury the defenses of res judicata and assignment relate to all defendants, and, in view of the uncertain state of the record, we are of the opinion that the errors were prejudicial.

The judgment is reversed.

Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

---

[4]The court instructed the jury as follows:

"If you find against the Defendants on all of the special defenses now on trial before you, then you should return a verdict for the Plaintiff.

"On the other hand, if you find for all of the Defendants on any one or more of the special defenses now on trial before you, then I instruct you that you shall return a verdict in favor of the Defendants."