Filed 3/12/14  Rikuo v. City of Gardena CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RIKUO CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF GARDENA,<br><br>    Defendant and Respondent. | B246325<br><br>(Los Angeles County<br>Super. Ct. No. BC485009) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed, in part, and dismissed, in part.

Peterson Law Group, John S. Peterson, Joseph A. Schwar for Plaintiff and Appellant Rikuo Corporation.

Oliver, Sandifer & Murphy, Cynthia C. Marian for Defendant and Respondent City of Gardena.

# INTRODUCTION

In a prior, related eminent domain action, plaintiff and appellant Rikuo Corporation (Rikuo) entered into a settlement with defendant and respondent City of Gardena (the City). Pursuant to the terms of the settlement, the trial court in the related action entered a consent judgment and, thereafter, two postjudgment orders awarding and releasing to the City certain remediation funds from a court-controlled deposit. Rikuo filed an appeal from the two postjudgment orders, which appeal we dismissed in a published opinion, holding that the consent judgment and the two postjudgment orders entered thereunder were not appealable. Rikuo then filed a new action against the City seeking to relitigate the issue of the entitlement to the court-controlled remediation deposit.

Rikuo appeals from a judgment entered against it in the new action following the trial court's order sustaining the City's demurrer without leave to amend. According to Rikuo, the trial court erred when it determined that each of Rikuo's causes of action against the City was barred under the doctrine of res judicata because, according to Rikuo, the postjudgment orders from the related action upon which that determination was based were entered without jurisdiction and therefore void. Rikuo further contends that, even if the postjudgment orders in the related action were within the jurisdiction of the trial court that entered them, those orders did not satisfy the elements of the res judicata doctrine. In addition, Rikuo argues that the trial court committed reversible error when it denied Rikuo's motion under Code of Civil Procedure section 170.6[1] to disqualify the judge assigned to the new action.

We hold that because the parties agreed that the trial court in the related action would reserve jurisdiction to enter the postjudgment orders upon which the trial court's

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

demurrer ruling was based, there is no merit to Rikuo's contention that the trial court lacked subject matter jurisdiction to enter those orders. We further hold that the postjudgment orders from the related action barred Rikuo, under the related doctrines of res judicata and collateral estoppel, from relitigating the subject matter of those orders in this case. And, because an order denying a motion to disqualify under section 170.6 is a nonappealable order, we dismiss the portion of Rikuo's appeal that challenges that order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Consent Judgment and Prior Appeal

"[The prior] appeal ar[ose] from an eminent domain action filed by the City against [Rikuo]." In 2004, following a mediation, the parties settled the eminent domain action and a related inverse condemnation action pursuant to a written settlement agreement. In 2006, pursuant to a stipulation, the trial court entered a "'Judgment and Final Order of Condemnation.'" (*City of Gardena, supra,* 192 Cal.App.4th at pp. 598-599.)

"[Rikuo] appeal[ed] from two orders, entered after judgment, that award[ed] and releas[ed] to the City certain funds [$373,306.40] from a court-controlled deposit[3] that was made under the judgment to cover the costs of remediation of the subject property. According to [Rikuo's] statement of appealability, the two orders [were] appealable pursuant to . . . section 904.1, subdivision (a)(2) as orders entered after judgment." (*City of Gardena, supra*, 192 Cal.App.4th at p. 599.)

---

**2** Certain portions of the factual and procedural background are taken from our published opinion issued in the prior appeal, *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595 (*City of Gardena*).)

**3** "Pursuant to the judgment, [Rikuo] was awarded $11 million as just compensation for the taking of the subject property, $750,000 of which was held back on deposit with the trial court to cover the cost of ongoing remediation of contamination on the subject property." (*City of Gardena, supra*, 192 Cal.App.4th at p. 599, fn. 1.)

In holding that Rikuo was attempting to appeal from nonappealable orders, we construed the consent judgment entered on the stipulation of the parties as follows:  "The judgment in this case was entered pursuant to the settlement agreement of the parties and a stipulation for judgment based on that agreement.  A stipulated or consent judgment is 'a judgment entered by a court under the authority of, and in accordance with, the contractual agreement of the parties [citation], intended to settle their dispute fully and finally [citation].'  (*Norgart v. UpJohn Co.* (1999) 21 Cal.4th 383, 400.)  'As a general proposition, a party may not appeal a consent judgment.'  (*Chavez v. Carpenter* [(2001)] 91 Cal.App.4th [1433,] 1438.)  [¶]  The judgment in this case recites that it 'resolves all claims and issues related to the taking of the Subject Property, including all claims and issues in the Inverse [Condemnation] Action as well as all claims and issues in this eminent domain action.'[4]  Thus, by consenting to the judgment, the parties manifested their intent to settle their dispute fully and finally.  . . . *The purpose of the stipulated judgment here was to resolve 'all claims and issues' arising from the eminent domain and inverse condemnation actions, including claims and issues relating to the cost of the ongoing remediation on the subject property.  As to such claims and issues involving remediation, the parties stipulated, in effect, to a dispute resolution mechanism by which the trial court would make factual determinations that would resolve those issues.*  Therefore, the parties in this case consented to a final judgment that is not appealable as a matter of law.  (See *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666 ['Simply because the order is a final judgment does not necessarily entitle a party to appellate review.  Thus, for example, a party cannot appeal from a judgment to which the party has stipulated as part of a settlement'].)  [¶]  . . .  [¶]  Here, the consent judgment expressly provides that it was intended to resolve all of the issues in

---

**4**    "Paragraph 3 of the judgment provides that defendant 'is the record owner of the Subject Property and has reached a settlement with the City, which resolves all its claims in this action and in the related inverse condemnation action, . . . and resolves the total amount of compensation to be paid for its interests in the Subject Property and all claims related to the taking of the Subject Property.'"  (*City of Gardena, supra*, 192 Cal.App.4th at p. 600, fn.5.)

4

controversy between the parties, including the manner in which disputes over the cost of remediation would be resolved. As a result, it would appear to be a final determination of the rights of the parties to the proceeding." (*City of Gardena, supra*, 192 Cal.App.4th at pp. 600-603, italics added.)

In construing the consent judgment at issue in the prior appeal, we further explained in *City of Gardena, supra*, 192 Cal.App.4th at pages 603 through 605 that, "[i]n addition to resolving all of the issues in controversy between the parties, the judgment to which [Rikuo] consented expressly waived all rights of appeal. [¶] In support of its contention that it did not waive its right to appeal from the trial court's determinations of remediation cost disputes, [Rikuo] relies on paragraphs 20 and 22 of the consent judgment and argues that when read together, the clear import of those paragraphs is to preserve the right to appellate review of the trial court's determinations concerning costs of remediation under paragraph 22. Paragraph 20 provides: '*Except as provided in Paragraph 22 below*, by having stipulated to the entry of this Judgment and Final Order of Condemnation, [Rikuo] *waives* the right to trial, statement of judgment, notice of entry of judgment, notice of entry of final order of condemnation as to the Subject Property, and the *right to appeal as to any and all claims and issues* related to the taking of the Subject Property.' (Italics added.) Paragraph 22 provides, in pertinent part: 'The sum of $750,000 of the [$11,000,000] Just Compensation [to be paid to [Rikuo] under the judgment] shall remain on deposit with the court until resolution of the issue of the cost of remediation, either through agreement of the parties or through findings made by the court or the trier of fact concerning the cost, if any, of definition and remediation of contamination from on-site sources on the Subject Property. *Pursuant to the stipulation of [the] City and [Rikuo] the court shall retain jurisdiction to resolve the issue of remediation if the parties cannot agree on its resolution*. The parties do not waive or release any defenses or claims that can be asserted by either party if the remediation issue is not resolved to the mutual satisfaction of the parties.' [¶] The express waiver in paragraph 20 of [Rikuo's] rights to appeal is broad and absolute, and is limited only by the reference at the beginning of that paragraph to matters excepted in paragraph 22. But

5

paragraph 22 deals only with the reservation of the right to present defenses and claims concerning remediation cost disputes to the trial court and the trial court's jurisdiction to resolve such defenses and claims. There is no mention of [Rikuo's] right to appeal from trial court determinations made pursuant to paragraph 22 and no language purporting to limit the otherwise broad waiver of appeal rights in paragraph 20. Thus, contrary to [Rikuo's] assertion, it expressly waived any right it had to appeal from subsequent trial court orders determining cost of remediation issues." (Italics added.)

Following the issuance of our published opinion in *City of Gardena, supra*, 192 Cal.App.4th 595, Rikuo filed a petition for review in the Supreme Court, which that court denied. As a result, our interpretation in *City of Gardena* of the consent judgment constituted a final determination of the parties' respective rights and obligations under that judgment, including the parties' respective rights to the balance of the court-controlled remediation deposit.

### B.     Rikuo's New Action

Notwithstanding our opinion in *City of Gardena, supra*, 192 Cal.App.4th 595, Rikuo filed a new action seeking to adjudicate anew its entitlement to the court-controlled remediation deposit. In that action, Rikuo asserted causes of action for inverse condemnation, breach of contract, and breach of the implied covenant of good faith and fair dealing, each seeking the recovery of the $373,306.40 amount awarded to the City by the trial court pursuant to the consent judgment. It alleged because it ultimately fully performed remediation work required under the settlement agreement with the City, it is entitled to that money.

The City responded to Rikuo's new action by filing a demurrer, arguing that each of Rikuo's causes of action was barred by the doctrine of res judicata. According to the City, because Rikuo's right to the balance of remediation deposit had been fully and finally litigated pursuant to the terms of the consent judgment, it could not relitigate that right in its new action. At the hearing on the City's demurrer, the trial court sustained the demurrer without leave to amend. This appeal followed.

6

## DISCUSSION

### A. Ruling on Demurrer

Rikuo challenges the trial court's ruling, based on res judicata principles, that sustained the City's demurrer without leave to amend. Rikuo first argues that the postjudgment orders awarding to the City the balance of the court-controlled remediation deposit were entered without subject matter jurisdiction. Rikuo next contends that, even if the trial court that entered the postjudgment orders had jurisdiction to issue them, they did not satisfy the elements of res judicata. Finally, they argue that they are entitled to the funds because of later remediation work.

#### 1. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*).) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Zelig*, *supra*, 27 Cal.4th at p. 1126.) And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse. (*Ibid.*)" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

#### 2. Principles of Res Judicata

7

"'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.]" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.' (*Slater v. Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests. "Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . ."'" (*McKee v. Dodd* (1908) 152 Cal. 637, 641 [93 P. 854].) [¶] 'In California the phrase "causes of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . .' (*Eichler Homes of San Mateo, Inc. v. Superior Court* (1961) 55 Cal.2d 845, 847-848 [13 Cal.Rptr. 194, 361 P.2d 914].) But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. (See *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) As we explained in *Slater v. Blackwood*, *supra*, 15 Cal.3d at page 795: '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is

8

the harm suffered.  When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.  (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58].)"  (*Boeken v. Phillip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797-798.)

"Collateral estoppel is a distinct aspect of res judicata.  . . .  '"Collateral estoppel . . . involves a second action between the same parties on a different cause of action.  The first action is not a complete merger or bar, but operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action.  ([4 Witkin, Cal. Procedure (2d ed. 1971) Judgment], § 197, at p. 3335.)"  (*Preciado v. County of Ventura* (1982) 143 Cal.App.3d 783, 786-787, fn. 2 [192 Cal.Rptr. 253].)'  (*Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1178 [260 Cal.Rptr. 76] (*Rymer*).)"  (*Murray v. Alaska Airlines, Inc*. (2010) 50 Cal.4th 860, 866-867.)

"'"Traditionally, we have applied the [collateral estoppel] doctrine only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding.  Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  [Citations.]'  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223], fn. omitted (*Lucido*).)"  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)  "[T]he public policies underlying collateral estoppel - - preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation - - strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy."  (*Lucido, supra*, 51 Cal.3d at p. 343.)

"The primary right theory also applies to the issue preclusion component of res judicata.  'In contrast to claim preclusion, in which a prior judgment bars a second suit

between the same parties, in issue preclusion "[t]he prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Most commonly, issue preclusion arises from successive suits on different claims; this is referred to as collateral estoppel. If, however, the second action is on *the same claim* [(i.e., same cause of action or primary right)], . . . issue preclusion based on the earlier determination is described as "direct estoppel." (See Rest.2d Judgments, § 17, com. c, pp. 149-150; Rest.2d Judgments, § 27, com. b, pp. 251-252.) Both collateral and direct estoppel, "like the related doctrine of res judicata [fn. omitted], ha[ve] the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." (*Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322, 326 [58 L.Ed.2d 552, 99 S. Ct. 645].)' (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997 [76 Cal.Rptr.2d 882], italics added (*Sabek*).) [¶] Thus, if a second lawsuit arises from the same cause of action on which the first lawsuit was based, i.e., the same wrongful act by the defendant that breached the plaintiff's primary right, direct estoppel will bar relitigating issues in the second action that were litigated and determined in the first action. This occurs even though no final judgment on the merits was entered in the first lawsuit. (*Sabek, supra*, 65 Cal.App.4th at pp. 998-999.)" (*South Sutter LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 660-661.)

    *3.*    *Analysis*

    a.    Subject Matter Jurisdiction

Rikuo's contends that the trial court in the related action lacked subject matter jurisdiction to enter the postjudgment orders awarding the balance of the remediation deposit to the City. Therefore, Rikuo argues, the trial court erred in relying on those void orders as the basis for its res judicata determination.

Rikuo's contention based on subject matter jurisdiction is meritless. As we explained in *City of Gardena, supra*, 192 Cal.App.4th at page 604, as part of their

10

settlement of that action, Rikuo and the City expressly stipulated that the trial court in that related action "shall retain jurisdiction to resolve the issues of remediation if the parties cannot agree on its resolution." That express stipulation, which became part of the consent judgment, was consistent with section 1263.720 which authorizes a trial court in an eminent domain action to establish a fund "to defray the probable cost of the required [remediation] action" and to exercise control over that fund "subsequent to entry of judgment." (§ 1263.720, subdivision (b).) Thus, the trial court in the related action retained the limited, but necessary, jurisdiction to enter the two postjudgment orders in issue.

### b. Claim and Issue Preclusion

Rikuo contends that the claims asserted in its new action—inverse condemnation, breach of contract, and breach of the implied covenant of good faith and fair dealing— involve primary rights that are different from the primary rights that were adjudicated in the postjugment proceedings that resulted in the two postjudgment orders in the related action. According to Rikuo, that difference renders the doctrine of res judicata inapplicable to the claims in its new action.

Whether Rikuo's contention is subjected to a claim preclusion or an issue preclusion analysis, the result is the same—the two postjudgment orders in the related action bar Rikuo from relitigating its entitlement to the $373,306.40 balance of the remediation deposit. Each cause of action in Rikuo's complaint is predicated upon its alleged primary right to possession of the $373,306.40 deposit previously awarded and released to the City under the terms of the consent judgment. But that right was also at the core of the dispute between Rikuo and the City over the balance of the remediation fund. Pursuant to the terms of the consent judgment, that dispute was voluntarily submitted to the trial court in the related action, fully litigated, and finally resolved in the City's favor. As a result, Rikuo is barred under the claim preclusion aspect of the res judicata doctrine from relitigating in this action its right to the balance of the remediation deposit.

11

Assuming, arguendo, that one or more of Rikuo's new causes of action is based upon a primary right that is different than the primary right adjudicated in the two postjudgment orders, Rikuo is nevertheless barred under the issue preclusion component of res judicata from relitigating the issue of the appropriate disposition of the balance of the remediation deposit in connection with its new action. To prevail on each of its three causes of action, Rikuo would be required to establish the identical issue—its entitlement to the balance of the remediation deposit. As noted, however, that entitlement issue was previously determined by the trial court in the related action. Moreover, that issue was actually litigated in the related action during lengthy evidentiary proceedings and was necessarily decided in that forum to resolve the dispute over the entitlement to the balance of the remediation deposit, i.e., the trial court in the related action could not award and release the deposit without first adjudicating the entitlement issue. And, as we explained in *City of Gardena, supra*, 192 Cal.App.4th 595, the decision of the trial court in the related action concerning that dispute was final and nonappealable. Finally, the parties to that former proceeding were identical to the parties in Rikuo's new action. Therefore, because each of the threshold requirements of issue preclusion was satisfied, the trial court correctly concluded that Rikuo's claims in the new action were barred.

Rikuo's theory that it is entitled to the funds because it ultimately fully performed the remediation work required under the settlement agreement is likewise meritless. It seeks the precise amount of funds already awarded to the City. The disposition of those funds has been conclusively determined.

### B.     Ruling on Disqualification

Rikuo seeks on direct appeal to challenge the trial court's denial of its motion to disqualify the trial judge under section 170.6. But, as explained below, it is well established that an order denying a disqualification motion under section 170.6 is not an appealable order and can only be reviewed by a writ of mandate sought within 10 days of the notice to the parties of the denial of the motion.

"Chapter 3 of title 2 of part 1 of the Code of Civil Procedure, entitled 'Disqualification of Judges,' prescribes the means by which a party may challenge an assigned judge 'for cause' (§ 170.1) or may exercise a peremptory challenge against the judge (§ 170.6).  In 1984, . . . the Legislature enacted section 170.3(d) pertaining to appellate review of disqualification motions.  Section 170.3(d) provides:  'The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding.'  (§ 170.3(d); see Stats. 1984, ch. 1555, § 1 et seq., pp. 5479-5484.)"  (*People v. Hull* (1991) 1 Cal.4th 266, 269.)  "[The issue is] whether a writ of mandate under Code of Civil Procedure section 170.3, subdivision (d) (footnote omitted) . . . is the exclusive means by which a party may seek review of an unsuccessful peremptory challenge against a trial judge.  (§ 170.6.)  We conclude . . . that section 170.3(d) prescribes the exclusive means of appellate review of an unsuccessful peremptory challenge."  (*People v. Hull, supra*, 1 Cal.4th at p. 268; see also *Hemingway v. Superior Court* (2004) 122 Cal.App.4th 1148, 1153, quoting *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1315 ["'The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate.'  (§ 170.3, subd. (d).)"].)

Based on the forgoing authorities, Rikuo was required to file a petition for a writ of mandate within the specified time period following the denial of its disqualification motion if it intended to seek appellate review of that denial.  Because it failed to timely seek such writ relief, its appeal from the denial of its disqualification motion must be dismissed.

## DISPOSITION

The judgment and the order upon which it is based sustaining the City's demurrer without leave to amend are affirmed and Rikuo's appeal from the trial court's order denying its disqualification motion under section 170.6 is dismissed. The City is awarded costs on appeal.

MOSK, J.

We concur:

TURNER, P.J.

MINK, J.*

---

* Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.