[No. H016704. Sixth Dist. July 28, 1998.]

SABEK, INC., Plaintiff and Appellant, v.
ENGELHARD CORPORATION, Defendant and Respondent.

COUNSEL

William H. Paynter, Thomas I. Saberi, Arzhang Boloorian, Lukens and Drummond and Donald F. Drummond for Plaintiff and Appellant.

Gresham, Savage, Nolan & Tilden and John C. Nolan for Defendant and Respondent.

OPINION

ELIA, J.—After the third order quashing service of summons on respondent Engelhard Corporation (Engelhard), appellant Sabek, Inc., filed this appeal, contending it is entitled to prove the court's personal jurisdiction over Engelhard. Sabek also challenges the court's order imposing sanctions for Sabek's disregard of the previous orders finding no minimum contacts between Engelhard and the State of California. We hold that the issue of personal jurisdiction was precluded by direct estoppel, and therefore affirm the order.

*Background*

Sabek owns a parcel of commercial property at 340 Moffett Boulevard in Mountain View. In August 1992 Sabek learned that the soil and groundwater underneath its property was contaminated with hazardous chemical substances. In December 1992 Sabek sued Union Bank, which owned adjacent property, alleging that the bank was responsible for the contamination.

In January 1996 Sabek filed its third amended complaint, which added 10 new defendants, including Engelhard. In this 10-count pleading Sabek asserted causes of action for negligence, strict liability, nuisance, and trespass.

Engelhard moved to quash service of summons on several grounds, including defective service and lack of personal jurisdiction. Engelhard asserted that it was a Delaware corporation, whose subsidiary might have once leased land adjacent to Sabek's, but the corporation itself had never done so. Service had been made by mailing the summons and complaint to Engelhard's California attorney, who was not authorized to accept service of process on behalf of the corporation. Sabek therefore could not meet its burden of proving minimum contacts with California, as required by *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057].

On April 29, 1996, Judge Leslie C. Nichols granted Engelhard's motion, finding Sabek had "not met its burden of establishing that 'minimum contacts' exist between defendant and the forum state." Prior to the hearing on

the motion, however, Sabek again attempted to serve Engelhard by delivering the third amended complaint to the corporation's registered agent in California.

Engelhard therefore brought another motion to quash. At the June 6 hearing on the second motion, Judge Nichols ruled that the second attempt at service was "a legal nullity because the substance of the issue, which was, was there minimum contacts, did those contacts exist, was briefed, submitted and decided." The pertinent language of the court's subsequent written order was identical to that of the first.

On October 2, 1996, Sabek filed its fifth amended complaint.[1] This time Sabek served Engelhard by sending the summons and complaint to Engelhard's office in New Jersey. Engelhard moved for another order quashing service, and it sought sanctions against Sabek for forcing it to reargue the issue of jurisdiction and for unethical conduct in accomplishing service of process.

Engelhard's third motion to quash was heard on February 11, 1997, before Judge Socrates P. Manoukian. Judge Manoukian asked Sabek "what changed about minimum contacts" that would support a different ruling in this proceeding. Sabek's counsel offered the deposition testimony of Som S. Swamy, that Swamy had once worked at 341 Moffett Boulevard, and that his employer had at one time been an Engelhard Corporation. As Engelhard pointed out, however, the deposition had been taken on November 29, 1994, 17 months before the court decided Engelhard's first motion to quash. Engelhard argued that Sabek was in effect attempting to offer a belated motion for reconsideration.

The court agreed with this characterization, finding the proceeding to be a motion for reconsideration, which should have been brought before Judge Nichols. Having failed either to move for reconsideration or to appeal the previous order, Sabek was not permitted to pursue the issue further. The court also found Sabek's attempt to serve Engelhard despite Judge Nichols's prior rulings to be "frivolous and in bad faith." Accordingly, on March 17, 1997, the court granted Engelhard's third motion to quash service and awarded $2,140 in sanctions pursuant to Code of Civil Procedure section 128.5.

## Discussion

According to Sabek, an order granting a motion to quash, like an order sustaining a demurrer with leave to amend, "allows the plaintiff to

---

[1] The record on appeal does not contain a fourth amended complaint.

serve any subsequent amended complaints." Consequently, Sabek argues, the issue of minimum contacts should have been decided on the merits notwithstanding its delay in seeking reconsideration, because "courts have the inherent jurisdiction to reconsider rulings until the ruling is finalized by entry of judgment, even in the absence of newly discovered evidence." In Sabek's view, the court improperly applied Code of Civil Procedure section 1008[2] to its service of the fifth amended complaint, because Sabek had not intended to seek reconsideration of the second order or complied with the requirements of section 1008.

In its appellate brief Engelhard continues to dispute Sabek's entitlement to relitigate an issue that was finally resolved in an appealable order, but without any express mention of issue preclusion. At the request of this court, the parties submitted supplemental letter briefs on the applicability of this doctrine. After reviewing the parties' arguments, we conclude that Sabek is barred by direct estoppel from reasserting the existence of minimum contacts, an issue that had already been decided prior to the March 1997 ruling.

■ Issue preclusion is one component of the doctrine of res judicata. In contrast to claim preclusion, in which a prior judgment bars a second suit between the same parties, in issue preclusion "[t]he prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Most commonly, issue preclusion arises from successive suits on different claims; this is referred to as collateral estoppel. If, however, the second action is on the same claim, as in this case, issue preclusion based on the earlier determination is described as "direct estoppel." (See Rest.2d Judgments, § 17, com. c, pp. 149-150; Rest.2d Judgments, § 27, com. b, pp. 251-252.) Both collateral and direct estoppel, "like the related doctrine of res judicata [fn. omitted], ha[ve] the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." (*Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322, 326 [99 S.Ct. 645, 649, 58 L.Ed. 552].)

In either of its forms, issue preclusion should be determined according to certain threshold requirements: " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding.

---

[2]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 . . . .)" (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

 These principles are applicable in the instant case. Sabek attempted three times to assert the same basis of jurisdiction for the same claims. At the hearing on the second motion to quash service, Judge Nichols found that the question of minimum contacts had already been "briefed, submitted and decided" in the previous order. Clearly, the jurisdictional issue in the fifth amended complaint was identical, it was actually litigated in the prior proceedings, it was necessarily decided (twice), and the parties are the same.

Sabek protests that the doctrine of issue preclusion is inapplicable because judgment was not rendered on the merits. This argument is untenable. The reason there was no judgment on the merits is that the court had no jurisdiction over the defendant; the lawsuit obviously could not proceed to judgment. The quashing of service ended the litigation as to Engelhard in a final, appealable order. Finality for purposes of issue preclusion is not the same as the finality essential to claim preclusion. "Pursuant to this distinction, a litigation may have reached a stage at which issue preclusion is appropriate even though claim preclusion—application of the rules of merger and bar—is not." (Rest.2d Judgments, § 27, com. k, p. 262.) In such cases, "[a]lthough . . . the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action." (Rest. Judgments, § 49, com. b, p. 195.) To require a "final judgment in the strict sense" where such a judgment cannot occur (because jurisdiction is lacking) would invite "needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish." (Rest.2d Judgments, § 13, com. g, pp. 135-136.)

Thus, even when the underlying cause of action itself is not barred, the rules of issue preclusion may nevertheless apply to a final order in which personal jurisdiction is found to be absent. In such a case, the order "is on the merits to the extent that it will bar the plaintiff from maintaining a further action in that State, [though] it is not on the merits so far as actions

in other States are concerned." (Rest. Judgments, § 49, com. a, p. 194; see also 46 Am.Jur.2d Judgments, § 500, p. 761.)[3]

*MIB, Inc.* v. *Superior Court* (1980) 106 Cal.App.3d 228 [164 Cal.Rptr. 828] is illustrative. There the defendant invoked the concept of direct estoppel by moving to quash service of summons based on the rulings in three previous actions. In each of the previous cases the court had quashed service on the ground that the plaintiff had failed to establish minimum contacts between the defendant and the State of California. The Second District, Division Four, held that "[a]lthough the three prior dismissals are not res judicata on the merits of the underlying cause of action [citation], there appears to be no reason why the prior decisions should not be res judicata upon the issue which was there decided." (106 Cal.App.3d at pp. 234-235.) The court was unsympathetic to the plaintiff's assertion that the previous decisions were wrong, and unconcerned by the plaintiff's claim that its new showing of jurisdiction was a stronger one. (Accord, *Bascom* v. *Jos. Schlitz Brewing Co.* (Iowa 1986) 395 N.W.2d 879, 881-884 [sustaining of defendants' special appearance for lack of minimum contacts supplied elements of issue preclusion in subsequent action]; *Tash* v. *Saunders* (1987) 153 Ariz. 322, 325-326 [736 P.2d 805, 808-809] [personal jurisdiction issue cannot be relitigated in new action]; cf. *Davis* v. *Eighth Judicial Dist. of State of Nevada* (1981) 97 Nev. 332, 336-337 [629 P.2d 1209, 1212] [no direct estoppel where order quashing service was not appealable order].)

In this case, Sabek attempted to serve a corporation over whom the court had twice ruled it had no jurisdiction. Sabek had not moved for reconsideration or appealed from either of those prior orders, and the orders became final. (Cal. Rules of Court, rule 2.) Whether the court was correct in determining that Engelhard lacked sufficient contacts with California is not relevant, since " '[a]n erroneous judgment is as conclusive as a correct one.' " (*Weil* v. *Barthel* (1955) 45 Cal.2d 835, 839 [291 P.2d 30]; *Smith* v. *Smith* (1981) 127 Cal.App.3d 203, 209 [179 Cal.Rptr. 492].) The lower court properly quashed service of summons and Sabek's fifth amended complaint.

Neither of the cases on which Sabek relies alters our conclusion. We cannot agree with the view expressed in *GMS Properties, Inc.* v. *Superior*

---

[3]The Second Restatement provides a compelling illustration of direct estoppel in analogous circumstances: "A brings an action against B for personal injuries arising out of an automobile accident. Jurisdiction is asserted over B, a nonresident, on the basis that the automobile involved in the accident was being operated in the state by or on his behalf. After trial of this issue, the action is dismissed for lack of jurisdiction. In a subsequent action by A against B for the same injuries, brought in the state of B's residence, the prior determination that the automobile was not being operated by or on behalf of B is conclusive." (Rest.2d Judgments, § 27, com. b, illus. 3, p. 252.)

*Court* (1963) 219 Cal.App.2d 407 [33 Cal.Rptr. 407, 33 P.2d 163] that an order quashing service of summons is analogous to an order sustaining a demurrer with leave to amend; the latter is not an appealable order and thus does not acquire the finality required for the application of res judicata. Furthermore, the *GMS* court relied on an inapposite Ohio case in which the order quashing service of summons was not reviewable and where jurisdiction was not specifically disclaimed. There is no discussion in *GMS* of collateral or direct estoppel.

*Ziller Electronics Lab GmbH* v. *Superior Court* (1988) 206 Cal.App.3d 1222 [254 Cal.Rptr. 410] also offers no support for Sabek's position. In *Ziller* the court determined that minimum contacts *did* exist, but it nonetheless granted the defendant's motion to quash because service had been ineffective. Reviewing the denial of a subsequent motion to quash, the Second District, Division Four held that the superior court had jurisdiction and discretion to reconsider the issue of minimum contacts in the second motion, because there had not been a complete resolution of both jurisdictional issues—minimum contacts and compliance with service requirements—in the first proceeding. The defendant had not been obligated to seek reconsideration or review from the first order because that order had been favorable to the defendant. Though the reviewing court declined to decide the merits of the jurisdiction issue, it did find that reconsideration was warranted because the plaintiff had not made a sufficient evidentiary showing of minimum contacts in the first proceeding.

*Ziller* has no application to the case before us. Here the matter of personal jurisdiction was completely resolved by the finding that no minimum contacts existed between Engelhard and this state. After the previous orders quashing service on this ground, it was incumbent upon Sabek to seek reconsideration or appellate review. Having failed to do so, Sabek is barred from relitigating the issue by direct estoppel. The lower court properly quashed service of the summons and fifth amended complaint.[4]

### Sanctions

The trial court's award of $2,140 in sanctions was based on the amount of attorney's fees Engelhard had incurred in its third motion to quash. The court reasoned that Sabek's attempt to serve Engelhard after twice being

---

[4]Because the court had no personal jurisdiction over Engelhard, it is unnecessary to address Sabek's contention that its method of service of the fifth amended complaint was proper.

defeated on the minimum contacts issue was "frivolous" within the meaning of section 128.5.[5]

■ On appeal, Sabek insists that it acted properly in attempting to serve Engelhard with the fifth amended complaint. Sabek fails to acknowledge the standard of review, however. An order awarding sanctions under section 128.5 is evaluated only for abuse of discretion. (*Campbell* v. *Cal-Gard Surety Services, Inc.* (1998) 62 Cal.App.4th 563 [73 Cal.Rptr.2d 64]; *Dolan* v. *Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1504 [29 Cal.Rptr.2d 903].) We do not independently determine whether appellant's conduct was frivolous or in bad faith, and we may not substitute our judgment for the judgment of the court below. (*Tenderloin Housing Clinic, Inc.* v. *Sparks* (1992) 8 Cal.App.4th 299, 304 [10 Cal.Rptr.2d 371].) " ' " 'To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice . . . .' " ' " (*Ibid.*; *Muega* v. *Menocal* (1996) 50 Cal.App.4th 868, 873-874 [57 Cal.Rptr.2d 697].)

Sabek makes no specific claim of abuse of discretion, but only asserts that it acted in good faith and "within its rights." Because no abuse of discretion is apparent on this record, we affirm the award of $2,140 in sanctions.

*Disposition*

The order is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

---

[5]Section 128.5, subdivision (a), provides in part: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." "Frivolous" is defined in subdivision (b)(2) as "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party."