Filed 5/29/13  Debro v. Los Angeles Raiders CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOSEPH DEBRO,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>LOS ANGELES RAIDERS,<br><br>          Defendant and Respondent. | A136456<br><br>(Alameda County<br>Super. Ct. No. RG12618107) |

Plaintiff Joseph Debro has filed a number of lawsuits since the mid-1990's in which he has alleged that loans made by governmental entities in 1995 to induce the Los Angeles Raiders (Raiders) to return to Oakland from Los Angeles were, in fact, gifts made without any expectation the loaned amounts would be repaid.  (See *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 943-944 (*Debro I*).)  In one earlier case, Debro alleged the Raiders violated the California False Claims Act (Gov. Code, §§ 12650-12655)[1] (the Act) in connection with the 1995 loans by knowingly presenting a false claim to a public entity.  (*Ibid.*)  In *Debro I,* Division Five of this court concluded that Debro's claim was barred by the applicable statute of limitations.  (*Debro I,* at pp. 955-956.)  In this action, Debro again alleges the Raiders violated the Act as a result of their acceptance of the 1995 loans, only now the claim is that the Raiders were the beneficiary of an inadvertent submission of a false claim.  The trial court sustained the Raiders' demurrer to Debro's complaint without leave to amend, reasoning the action is

---

[1]  All further statutory references are to the Government Code unless otherwise specified.

1

barred by direct estoppel and the applicable statute of limitations. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

When we review an order sustaining a demurrer, we ordinarily take the factual background from the properly pleaded material allegations of the operative complaint. (*Estate of Dito* (2011) 198 Cal.App.4th 791, 795.) In this case, however, because one of the grounds for the demurrer is the purported direct estoppel effect of prior litigation between the parties, we must necessarily consider the action that is claimed to have preclusive effect. (*Ibid.*) Therefore, we begin by summarizing the prior litigation that allegedly precludes Debro's current complaint.

### *Summary of Debro I*

"On August 7, 1995, [the Raiders] and entities known as the East Bay Entities (the City of Oakland, the County of Alameda, the Oakland-Alameda County Coliseum Authority, the Oakland-Alameda County Coliseum Financing Corporation, and the Oakland-Alameda County Coliseum, Inc.) entered into certain agreements by which the Raiders would play professional football in Oakland through 2011." (*Debro I*, *supra*, 92 Cal.App.4th at p. 943.) Pursuant to the terms of a master agreement, the Oakland-Alameda County Coliseum was to be expanded and modernized. Under a loan agreement that was part of the master agreement, the East Bay Entities authorized loans of "up to $85 million to the Raiders to finance the renovation of the stadium, $10 million to finance the construction and development of a training facility, and $53.9 million for operations purposes." (*Ibid.*) The loans to the Raiders were nonrecourse. (*Ibid.*)

Debro filed a lawsuit against the City of Oakland and others in 1995 seeking to void the master agreement. The court dismissed the action in 1996. Debro then filed a lawsuit against the Oakland-Alameda County Coliseum Authority in 1997 in which he sought damages for professional misconduct relating to the loan agreement and the contracts to renovate the Coliseum. That lawsuit was dismissed in 1999. (*Debro I*, *supra*, 92 Cal.App.4th at p. 944.)

2

In 1999, Debro filed the lawsuit giving rise to the appellate decision in *Debro I*. (*Debro I, supra,* 92 Cal.App.4th at p. 944.) As relevant here, Debro alleged in the second cause of action that the Raiders violated the Act by " 'negotiat[ing] and accept[ing] $64.9 million of public money as a payment for relocating of the Raiders to Oakland and fraudulently conspir[ing] to hide the relocation payment in a public document by calling said relocation payment a loan in violation of Government Code Section 12651.' " (*Id.* at p. 945.) After the trial court sustained a demurrer to Debro's complaint, he filed an appeal that was limited to the second cause of action. (*Ibid.*)

The issue on appeal in *Debro I* concerned the proper interpretation and application of former section 12654, subdivision (a), which sets forth the statute of limitations applicable to actions under the Act.[2] (See *Debro I, supra,* 92 Cal.App.4th at pp. 948-956.) Former section 12654, subdivision (a) provides in relevant part that a civil action under the Act "may not be filed more than three years after the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances or, in any event, no more than 10 years after the date on which the violation of Section 12651 is committed." The court held that the three-year "limitations period under [former] section 12654, subdivision (a), commences when the 'official . . . charged with responsibility to act in the circumstances' either knows of the false claim or knows of facts which would lead a reasonably prudent person to suspect it." (*Debro I,* at p. 953.)

The appellate court in *Debro I* began its analysis by characterizing the alleged false claim as one in which the Raiders requested and accepted $64.9 million as a purported loan when in fact it was a " 'payoff' or *gift*." (*Debro I, supra,* 92 Cal.App.4th at p. 948, fn. omitted.) The court concluded that "the facts known to Oakland and Alameda County officials in August 1995 reasonably put them on inquiry notice of the

---

[2] Section 12654, subdivision (a) was amended effective January 1, 2010, and again on January 1, 2013. (Stats. 2009, ch. 277, § 4; Stats. 2012, ch. 647, § 6.) We use the term "former section 12654, subdivision (a)" to refer to the version of the statute last amended by Statutes 1996, chapter 1051, section 1.

Raiders' purported intention to *treat* the transaction as a gift, whether that was the legal effect of the loan agreement or not." (*Id.* at p. 954.) Among other things, the court pointed out that Debro himself had appeared before the Oakland City Council in July 1995, where he characterized the loans to the Raiders as a gift of public monies. (*Ibid.*) The court in *Debro I* affirmed the judgment of dismissal on the ground the three-year limitations period had expired before Debro filed his complaint in October 1999. (*Id.* at p. 956.)

### *Current Action*

Debro filed his complaint against the Raiders in the action giving rise to this appeal on February 22, 2012. The operative first amended complaint (hereafter "complaint") contains five causes of action against the Raiders under the Act. The basis for Debro's current complaint is the 1995 loan agreement between the Raiders and the East Bay Entities. The allegations are largely identical to those considered in *Debro I,* except that Debro now contends the 1995 loan agreement was exposed "as a misleading document[] and a false claim" on June 3, 2002, when the Los Angeles County Superior Court issued a statement of decision in a dispute between the Raiders and the National Football League (NFL). As set forth in the complaint, the Raiders brought an action against the NFL in 1999 seeking, among other things, a declaration that the 1995 loans were not "revenue" that had to be shared with other NFL owners. The trial court in Los Angeles disagreed and characterized the loans as revenue in its statement of decision.

Debro alleges the 2002 Los Angeles trial court decision exposed the loans as a false claim. As relevant here, in the fifth cause of action in the complaint, Debro alleges a violation of subdivision (a)(8) of section 12651, in that the Raiders purportedly were "a beneficiary of an inadvertent submission of a false claim to East Bay Entities, subsequently discover[ed] the falsity of the claim and fail[ed] to disclose the false claim to East Bay Entities within a reasonable time after the discovery of the false claim."

The Raiders filed a demurrer to all five causes of action in the complaint, arguing they were untimely as a matter of direct estoppel in light of the decision in *Debro I.* In addition, the Raiders argued the causes of action were time-barred, failed to state a claim,

4

and failed for uncertainty. The Raiders included with their demurrer a request for judicial notice of the *Debro I* decision and Debro's operative complaint in the 1999 action.

The trial court granted the Raiders' request for judicial notice, sustained the demurrer without leave to amend as to all five causes of action, and dismissed the entire action. Debro timely appealed from the judgment of dismissal.

## DISCUSSION

On review of an order sustaining a demurrer without leave to amend, we exercise independent judgment in assessing whether the complaint states a cause of action as a matter of law. (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." ' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) When a demurrer is sustained without leave to amend, we reverse if there is a reasonable possibility an amendment could cure the defect. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

On appeal, Debro concedes he has abandoned the first four causes of action in his complaint, leaving for our consideration the fifth cause of action under section 12651, subdivision (a)(8). Whereas subdivisions (a)(1) through (a)(7) of section 12651 involve intentional or willful presentation of a false claim to a public entity, subdivision (a)(8) provides in relevant part that a "beneficiary of an inadvertent submission of a false claim" who "subsequently discovers the falsity of the claim[] and fails to disclose the false claim to the . . . political subdivision within a reasonable time after discovery" is subject to civil liability under the Act. In *Debro I,* the action was premised on a claim the Raiders *intentionally* submitted a false claim, in violation of subdivisions (a)(1) through (a)(3) of section 12651. (See *Debro I, supra,* 92 Cal.App.4th at p. 947.) Here, by contrast, Debro contends the Raiders were the beneficiaries of an *inadvertent submission* of a false claim and later failed to disclose the matter to public officials after learning of the claim's falsity, in violation of subdivision (a)(8) of section 12651.

5

The threshold question raised on appeal is whether Debro's cause of action for the inadvertent submission of a false claim is precluded by the determination in *Debro I* that the statute of limitations expired long ago on a cause of action alleging that the Raiders intentionally submitted a false claim to the East Bay Entities. (*Debro I, supra,* 92 Cal.App.4th at p. 956.) To answer this question, we consider principles governing when a party is precluded from relitigating an issue decided in a previous action.

"Issue preclusion is one component of the doctrine of res judicata. In contrast to claim preclusion, in which a prior judgment bars a second suit between the same parties, in issue preclusion '[t]he prior judgment is not a complete bar, but it "operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." [Citation.]' [Citation.] Most commonly, issue preclusion arises from successive suits on different claims; this is referred to as collateral estoppel. If, however, the second action is on the same claim . . . issue preclusion based on the earlier determination is described as 'direct estoppel.' " (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997; see also *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1563.) For purposes of direct estoppel, a second action involves the same claim if it concerns the same cause of action or primary right adjudicated in the prior action. (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 661.) The primary right is the right of the plaintiff to be free from a particular injury and is distinguished from the legal theory on which liability for that injury is premised. (*Id.* at p. 660.) One injury gives rise to one claim for relief even though recovery may be predicated on multiple legal theories. (*Ibid.*) Both collateral and direct estoppel serve the duel purposes of promoting judicial economy and relieving litigants of the burden of relitigating an identical issue with the same party. (*Ibid.*)

A prior decision precludes relitigation of an issue only if certain threshold requirements are met. "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided

6

in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

In this case, all five requirements for applying direct estoppel are met. First, the statute of limitations issue presented by this action is the same as that actually litigated and decided in the 1999 action—i.e., when did the three-year limitations period specified in former section 12654, subdivision (a) commence for claims alleging that the 1995 loans to the Raiders constituted a false claim under the Act? In addition, the issue was actually litigated between the same parties in the former proceeding, was necessary to the decision, and resulted in a final decision on the merits for purposes of issue preclusion.[3] Thus, the principle of direct estoppel dictates that Debro is bound by the prior determination that the limitations period for his claims under the Act expired in August 1998, or three years after the responsible officials from the East Bay Entities knew of the false claim or had knowledge of facts that would lead a reasonably prudent person to suspect the claim was false. (See *Debro I, supra,* 92 Cal.App.4th at pp. 953-956.)

Debro claims he is not bound by *Debro I* because it concerned *intentional* false claims and did not consider *unintentional* or inadvertent false claims, such as the one presented by his fifth cause of action under section 12651, subdivision (a)(8). We are not persuaded. Although his cause of action under section 12651, subdivision (a)(8) presents a new theory of liability, the cause of action turns on the same alleged false claim and

---

[3] "Finality for purposes of issue preclusion is not the same as the finality essential to claim preclusion." (*Sabek, Inc. v. Engelhard Corp., supra,* 65 Cal.App.4th at p. 998.) Claim preclusion, or res judicata, bars a second suit only when the prior judgment was rendered on the merits. (*Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591, 1595-1596.) Because a judgment based on the statute of limitations is considered a technical rather than a substantive termination of an action (*id.* at p. 1596), it is not considered final for purposes of claim preclusion. However, for purposes of issue preclusion, a judgment is sufficiently final and on the merits if it bars the plaintiff from maintaining a further action on the same claim. (*Sabek, Inc. v. Engelhard Corp., supra,* at pp. 998-999; see also *Border Business Park, Inc. v. City of San Diego, supra,* 142 Cal.App.4th at p. 1565.) The judgment of dismissal in *Debro I* meets that criterion of finality.

primary right considered by the court in *Debro I*—i.e.*,* the 1995 loans that were allegedly a gift of public monies to the Raiders. Because the cause of action rests on the same alleged false claim as the causes of action held to be time-barred in *Debro I,* the new "inadvertent beneficiary" theory of liability is immaterial to the direct estoppel analysis. "For purposes of issue preclusion, . . . , an 'issue' includes any legal theory or factual matter which could have been asserted in support of or in opposition to the issue which was litigated." (*Border Business Park, Inc. v. City of San Diego, supra,* 142 Cal.App.4th at pp. 1565-1566.)

Further, Debro's argument ignores the basis on which the appellate court decided the statute of limitations issue in *Debro I.* The decision turned on when the officials at the East Bay Entities with responsibility for taking action knew or had reason to know of the true nature of the 1995 loans. (*Debro I, supra,* 92 Cal.App.4th at pp. 953-956.) The court concluded the responsible officials were on notice of the facts supporting a characterization of the loans as a false claim as early as August 1995. (*Ibid.*) For purposes of assessing the public officials' knowledge, which is the pertinent inquiry for statute of limitations purposes, it is irrelevant whether the false claim was submitted intentionally or inadvertently. As the court recognized in *Debro I,* "[i]t is not necessary that all of the facts be discovered for the limitations period to commence. [Former] [s]ection 12654, subdivision (a) merely requires that the responsible government officials be placed on notice of the facts giving rise to the claim, not that they learn of every detail or determine the particular legal theory the plaintiff would later assert." (*Id.* at p. 955.)

Moreover, it is of no consequence that a trial court in Los Angeles rendered a decision in 2002 characterizing the 1995 loans as revenue under the NFL's constitution and bylaws. That determination did not restart the limitations period or change the fact that responsible officials knew of the true nature of the loans seven years earlier. Accordingly, as a matter of direct estoppel, we conclude Debro is bound by the court's determination in *Debro I* that the limitations period for his claims under the Act expired

8

in August 1998. The trial court did not err in sustaining the demurrer to the complaint on that basis.

Even if direct estoppel did not apply under the circumstances presented here, Debro's claim would still be time-barred under a straightforward application of the rule in *Debro I* that claims under the Act expire three years after the responsible public official "either knows of the false claim or knows of facts which would lead a reasonably prudent person to suspect it." (*Debro I, supra,* 92 Cal.App.4th at p. 953.) The issuance of the 2002 Los Angeles trial court decision as alleged in the complaint would have caused a prudent public official to suspect that grounds existed to characterize the 1995 loans as false claims under the Act, even if that official had no reason to know the true nature of the loans before that date. Thus, even if we focus solely on the allegations of the complaint and ignore the prior determination in *Debro I*, the limitations period expired no later than 2005, three years after the issuance of the Los Angeles trial court's decision. Because Debro's complaint was filed seven years after the limitations period expired, it is untimely and subject to dismissal.

Debro contends the rule announced in *Debro I* does not apply to inadvertent false claims alleged under subdivision (a)(8) of section 12651. He also makes a novel argument that the statute of limitations has not yet begun to run on the violation because the Raiders have not yet notified the East Bay Entities of the false claim following their discovery of the claim's falsity. According to Debro, the limitations period on an inadvertent beneficiary claim does not commence until the beneficiary discovers the falsity of the claim *and* notifies the responsible government official of the claim. The argument is frivolous.

Debro's interpretation is in direct conflict with the language of former section 12654, subdivision (a), which establishes that the limitations period commences when the responsible government official discovers the false claim. By its plain terms, former section 12654, subdivision (a) applies to any "civil action" filed under the Act and is not limited to intentional or willful false claims under subdivisions (a)(1) through (a)(7) of section 12651, as Debro contends. Thus, the critical inquiry for purposes of determining

9

when the limitations period commences on an "inadvertent submission" claim is the point in time the responsible public official discovers the false claim, irrespective of if or when an inadvertent beneficiary notifies the official of the existence of the false claim.[4]

As a final matter, we consider whether the trial court acted within its discretion in sustaining the demurrer without leave to amend. Debro bears the burden of establishing a reasonable probability that an amendment could cure the defects in his complaint. (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 44.) Because Debro has offered no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, we discern no abuse of discretion in denying leave to amend.

### DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

_____
McGuiness, P.J.

We concur:

_____
Pollak, J.

_____
Siggins, J.

---

[4] Because we conclude the trial court properly sustained the Raiders' demurrer, it is unnecessary to consider the remaining grounds offered to support the trial court's order.

10