Filed 10/18/21  Tricoast Builders v. Frederick CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TRICOAST BUILDERS, INC. et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>KELLY A. FREDERICK et al.,<br><br>    Defendants and Respondents. | 2d Civ. No. B307825<br>(Super. Ct. No. 56-2017-00496775-CU-BC-VTA)<br>(Ventura County) |

The parties settled this construction defect case at a mandatory settlement conference (MSC) and placed the settlement terms on the record.  The parties agreed on the record that the settlement terms would be memorialized in a fully executed agreement prior to payment of the settlement amounts. Michael Connette, both individually and as a principal of Tricoast Builders, Inc. (Tricoast), refused to sign the settlement agreement.  Kelly A. Frederick and Timothy Athens (collectively "homeowners") moved ex parte for an order to show cause why

the settlement agreement had not been signed and requested monetary sanctions against Tricoast and Connette.

The trial court issued an order to show cause why the settlement had not been completed and why sanctions should not be imposed under Code of Civil Procedure section 128.5.[1] Connette claimed he "had not been well for several months after the MSC" and had advised Tricoast's other counsel, Darren M. Ebner, that he disagreed with the terms of the written settlement agreement. No details were provided as to either claim.

The trial court sanctioned Tricoast and Connette in the amount of $10,000 and ordered the court clerk to execute the settlement agreement on their behalf. They argue on appeal that both acts constituted an abuse of judicial discretion. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Homeowners hired Tricoast to rebuild their home after it sustained significant fire damage. Following disagreements regarding the construction quality, homeowners fired Tricoast, which, in turn, recorded a mechanic's lien and filed this action against homeowners and others for money allegedly owed on the project. Homeowners cross-complained against Tricoast and Connette, for various damages related to the construction failures. Tricoast and Connette filed a cross-complaint for indemnity against several subcontractors.

In addition to being an officer of Tricoast, Connette represented the company as its attorney in its affirmative claims against homeowners. Ebner, who was retained by Tricoast's insurer, represented Tricoast and Connette in defending homeowners' claims and in pursuing indemnity against the subcontractors.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise stated.

2

The entire case settled at the MSC on February 3, 2020. Ebner appeared as Tricoast's attorney, and Connette appeared as both Tricoast's attorney and its corporate representative. The settlement required Tricoast's insurer to pay homeowners $420,000. Homeowners would then pay $41,000 of that insurance payment to Tricoast, with the subcontractors paying an additional $9,000, so that Tricoast would receive $50,000.

Judge Kent M. Kellegrew served as the MSC settlement officer. After approximately eight hours of negotiations, Ebner placed the basic settlement terms on the record. He stated that "all releases will include a [Civil Code section] 1542 waiver and standard release language *in a settlement agreement forthcoming*." (Italics added.) Attorney Michael Bubman, representing Pennymac Corporation, also confirmed that the issue of the Civil Code section 1542 waiver "*will be addressed in the settlement agreement*." (Italics added.) Ebner further stated that "[i]t was discussed among at least some of the parties that the funding at least for [Tricoast's insurer] will be made within 30 days *of a fully executed settlement agreement*," and the money to be paid back to Tricoast would be "45 days within *the signing of the agreement*." (Italics added.) Bubman agreed the initial payment would be "30 days from the *signing of the fully executed settlement agreement*." (Italics added.)

Judge Kellegrew emphasized the need for a written settlement agreement: "So with this many moving parts and that much money, you are better served to have a written settlement agreement that will be concurrent but must be consistent with what we do here today. It takes time to get that done. And then it takes time to have so many parties sign off on it. And that event precedes the exchange of money which impacts when the money gets delivered." Judge Kellegrew confirmed that Ebner

3

"will be carrying the laboring oar" in drafting the settlement agreement and set an April 3, 2020 hearing date for compliance and dismissal of the action.

Ebner drafted the settlement agreement, which all parties but Tricoast, Connette and JAT Construction (JAT) signed by May 12, 2020. The April 3, 2020 hearing was taken off calendar due to COVID-19 restrictions. Between April 2020, when the settlement agreement was first circulated, and June 19, 2020, homeowners' counsel, Vida Tarassoly, "made many attempts to contact [Tricoast] and its attorneys Michael Connette and Darren Ebner, through email and phone" and stated "[t]hey have failed to sign the settlement agreement to this day."

To break the apparent impasse, homeowners filed an ex parte application for an order to show cause why the settlement agreement had not been signed. The trial court set a hearing for July 20, 2020. Homeowners also filed a motion for monetary sanctions against Tricoast and Connette based on their failure to execute the agreement. They requested that Tricoast and Connette pay the $16,750 in expenses incurred in attempting to obtain their signatures on the settlement agreement.

Connette claimed he "had not been well for several months after the MSC" and that he disagreed with the way Tricoast was defined in the settlement agreement, even though it was drafted by Tricoast's other counsel. The trial court deferred its ruling at the order to show cause hearing, but expunged Tricoast's mechanics lien on homeowners' property and gave them additional time to file a reply brief in support of the sanctions

4

motion.[2] The reply sought an additional $8,877.51 in attorney fees incurred in attempts to finalize the settlement agreement.

At the continued hearing on August 10, 2020, the trial court awarded sanctions in the amount of $10,000 against Tricoast and Connette, jointly and severally, pursuant to section 128.5. It explained: "The record is clear that Judge Kellegrew gave the parties until April 3, 2020 to execute a written settlement agreement memorializing the MSC settlement arrived at on February 3, 2020. The record is clear that the parties to the settlement agreement – *with the exception of Mr. Connette and Tricoast* – executed the agreement. [Homeowners'] counsel . . . declares that she made multiple efforts to contact Mr. Connette and Tricoast to get them to sign the agreement but they were not responsive."

The trial court instructed the court clerk to execute the settlement agreement on behalf of Connette and Tricoast and ordered that the sanctions be paid from the $41,000 settlement payment due to Tricoast. Tricoast filed a notice of appeal.[3]

---

[2] Judge Vincent O'Neill heard both the order to show cause and the sanctions motion.

[3] As homeowners point out, Connette is listed on the notice of appeal as Tricoast's counsel but not as an appellant. Given that Connette signed the notice and is jointly and severally liable for the sanctions award, we liberally construe the notice of appeal to include him as an appellant. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 885-887 ["[A] reviewing court must construe a notice of appeal from a sanctions order to include an omitted attorney when it is reasonably clear that the attorney intended to join in the appeal, and [the] respondent was not misled or prejudiced by the omission"].)

DISCUSSION

*Standard of Review*

We review an award of section 128.5 sanctions for abuse of discretion. (*Wallis v. PHL Associates, Inc.* (2008) 168 Cal.App.4th 882, 893.) "'Discretion is abused whenever, in its exercise, the [trial] court exceeds the bounds of reason, all of the circumstances before it being considered. . . .'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 (*Denham*).) We do not independently determine whether the challenged conduct was frivolous or in bad faith, and we may not substitute our judgment for that of the trial court. (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1001.) Unless the complaining party shows a clear case of abuse and that there has been a miscarriage of justice, we will not disturb the trial court's exercise of discretion. (*Denham*, at p. 566.)

*The Trial Court Did Not Abuse Its Discretion by*
*Sanctioning Tricoast and Connette*

Section 128.5, subdivision (a) gives the trial court discretion to award "reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." Tricoast and Connette contend the trial court abused its discretion by sanctioning them for not signing the settlement agreement. They argue that the court lacked jurisdiction to enforce the settlement agreement because Judge Kellegrew did not retain jurisdiction under section 664.6, and that the oral settlement agreement made in open court was not contingent upon the preparation of a subsequent written agreement. We reject both arguments.

Section 664.6, subdivision (a) provides: "If parties to pending litigation stipulate, in a writing signed by the parties

6

outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." While it is true that Judge Kellegrew did not retain jurisdiction under section 664.6 because the principal of Rob's Plumbing was not present at the MSC, an oral settlement agreement is enforceable against a party who was not present if that party subsequently agrees in writing. (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1424, 1431-1432 ["'[M]ix and match' approach to the *manner* of agreement" is permissible "as long as all parties agree to the *same material terms*"].) The record reflects that Rob's Plumbing signed the written settlement agreement on May 12, 2020.

As to the motion's merits, homeowners concede the trial court did not expressly "order" the parties to execute a written settlement agreement, but it is apparent from the record that the parties agreed that one would be prepared and that the deadlines for making the settlement payments would be governed by the fully executed agreement. Ebner represented that "[i]t was discussed among at least some of the parties that the funding at least for [Tricoast's insurer] will be made within 30 days *of a fully executed settlement agreement*," and the money to be paid back to Tricoast would be "45 days within *the signing of the agreement*." (Italics added.) Bubman also confirmed that the initial payment would be "30 days from the *signing of the fully executed settlement agreement*." (Italics added.) Thus, as reflected in the record, no settlement payments would be due by any party until there was a fully executed settlement agreement. Judge Kellegrew acknowledged that "it takes time to get [a settlement agreement] done. And then it takes time to have so many parties sign off on

7

it. *And that event precedes the exchange of money which impacts when the money gets delivered.*"  (Italics added.)

In addition, execution of a written settlement agreement had a practical purpose.  The oral settlement agreement required Rob's Plumbing to pay $1,500 to Tricoast but that party's principal was not present at the MSC.  Consequently, as Judge Kellegrew explained, the oral settlement agreement was unenforceable under section 664.6 because Rob's Plumbing could still repudiate it.  It was only when its principal signed the written settlement agreement that Rob's Plumbing became bound by the settlement terms.  (See *Elyaoudayan v. Hoffman*, *supra*, 104 Cal.App.4th at p. 1431.)

The record also confirms that the written settlement agreement is consistent with the oral agreement's terms.  The written agreement provided that "[w]ithin thirty (30) days of receipt of signatures to the Agreement," Tricoast's insurer shall forward $420,000 to homeowners' counsel, Vida Tarassoly.  Further settlement payments also were conditioned upon "receipt of signatures to the Agreement."

Tricoast's insurer made the $420,000 payment to Tarassoly before the payment was required.  In a May 28, 2020 response to an email from Tarassoly regarding the status of the written settlement agreement, Connette inquired:  "Was your client not paid pursuant to an agreement?  [¶] And, has your client paid [Tricoast] pursuant to an agreement?"  Tarassoly responded: "The money is sitting in my trust account.  I have been prohibited from distributing it to my clients or Tricoast unless there is an executed agreement signed by all involved parties.  Your client, Tricoast, is the only party not having signed the agreement, and you have continually failed to respond in a meaningful way to my inquiries as to the reasons why your client has refused to do so."

8

Tarassoly further stated she had filed a complaint with the state bar and was filing the motion for sanctions.

The record reflects that the other parties signed the settlement agreement between April 6 and May 12, 2020.[4] In his opposition to the sanctions motion, Connette declared that he informed Ebner's firm, Springle and Fink, "that he was not well and . . . did not agree with the draft of the settlement agreement." Connette did not specify when that occurred or whether he specifically informed Ebner of these facts. Connette further declared that he sent a copy of the agreement to Tricoast's president but was unable to contact him "for several months." Once again, no specifics were provided.

The first date mentioned in Connette's declaration is June 4, 2020, when he "requested that Defendants provide an agreement that was agreed to on the court record." He did not identify to whom this request was made and whether it was by phone, email or letter. Connette's other claimed communications with Tarassoly, which he did document with emails, occurred after the sanctions motion was filed on June 23, 2020.

The record reflects that Connette first advised Tarassoly in July 2020 of his concerns regarding how he and Tricoast were defined in the settlement agreement. Tarassoly responded that "rather than making a general statement that the agreement is

---

[4] The copy of the settlement agreement in the record does not include a signature for JAT. Homeowners requested sanctions against JAT for its failure to execute the settlement agreement, but the trial court denied the request, finding they had failed to "explain in their papers how JAT had engaged in delay." Regardless, the issue of whether or not JAT signed the written agreement is not before us.

completely inaccurate, it would be better that [he] be more specific about [his] alleged inaccuracies."

On July 14, 2020, Connette sent Tarassoly a copy of the settlement agreement with his proposed changes. At that point, all other parties had signed the agreement. Connette's proposed changes not only revised the definition of Connette and Tricoast, as he had suggested, but it also deleted 20 paragraphs of mostly standard settlement language. Homeowners rejected the proposed changes as untimely and inappropriate.

Connette does not dispute that he was present at the MSC and agreed to the settlement terms which, according to the record, included execution of a settlement agreement before any payments would be due. Judge Kellegrew gave the parties two months to finalize the settlement and dismiss the case. COVID-19 disrupted that plan, but a draft settlement agreement was circulated by Ebner and signed by the other parties by mid-May 2020. There is no evidence that Connette made any effort in April or May to explain to Tarassoly or the other parties' counsel why he would not sign the agreement. He claims he was unwell but does not state he was unable to communicate during that period. It also is unclear whether, on June 4, 2020, he requested "that Defendants provide an agreement that was agreed to on the court record." Connette provided no evidence of any communications with opposing counsel prior to the filing of the sanctions motion.

We conclude Tricoast and Connette have not demonstrated that the trial court's $10,000 sanctions award exceeded the bounds of reason or constituted a miscarriage of justice. (*Denham*, *supra*, 2 Cal.3d at p. 566.) To the contrary, the MSC was held on February 3, 2020, and Judge Kellegrew contemplated dismissal of the action by April 3, 2020. Tricoast

10

and Connette's refusal to sign the settlement agreement or to explain their reasons for that refusal delayed finalization of the settlement until August 10, 2020, when the court ordered the clerk to execute the agreement on their behalf. As a direct result of Tricoast and Connette's unreasonable delay, homeowners had to incur the expense of applying for an order to show cause and obtaining a court order authorizing release of the $420,000 in settlement funds. Under these circumstances, imposition of sanctions was well within the court's discretion.

### *Motion for Sanctions on Appeal*

Homeowners seek $5,313 in sanctions against Tricoast and Connette for filing and pursuing a frivolous appeal. (§ 907; Cal. Rules of Ct., rule 8.276.) They claim that Tricoast and Connette "ignor[ed] the facts that led the trial court to reach its findings" and that "[a] fair analysis of the record shows that [they] did this [appeal] for the primary purpose of causing [homeowners] stress and costing them money."

Our Supreme Court has instructed that "an appeal should be held to be frivolous only when it is prosecuted for an improper motive – to harass the respondent or delay the effect of an adverse judgment – or when it indisputedly has no merit – when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] . . . [T]he punishment should be used most sparingly to deter only the most egregious conduct." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651.) Although Tricoast and Connette's arguments are not supported by our reading of the record, we conclude the appeal is not "so totally and completely without all arguable merit as to justify an award of sanctions under those demanding requirements." (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1208.)

11

## DISPOSITION

The trial court's order awarding sanctions against Tricoast and Connette is affirmed.  The motion for sanctions on appeal is denied.  Respondent homeowners shall recover their costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

Vincent O'Neill, Judge
Superior Court County of Ventura

_____

Connette Law Office, Michael Connette, on behalf of Plaintiffs and Appellants.

Law Office of Daniel M. O'Leary, Daniel M. O'Leary, for Defendants and Respondents.