Filed 3/20/25  Whispering Oaks Residential etc. v. Cincinnati Insurance Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WHISPERING OAKS RESIDENTIAL CARE FACILITY LLC, et al., | H052620 (Santa Clara County Super. Ct. No. 21CV383313) |
| Plaintiffs and Appellants, | |
| v. | |
| CINCINNATI INSURANCE COMPANY, | |
| Defendant and Respondent. | |

Commencing in 2014, plaintiffs Whispering Oaks Residential Care Facility LLC, Whispering Oaks RCF Management Co., Inc., and Naren Chaganti (Whispering Oaks) filed a series of lawsuits against defendant Cincinnati Insurance Company (Cincinnati) stemming from incidents that occurred in 2010 at Whispering Oaks' property in Missouri.  In each lawsuit, including the case now before us, Whispering Oaks alleged Cincinnati failed to make payments under Whispering Oaks' insurance policy issued by Cincinnati for the damage from the 2010 incidents.

In a lawsuit filed by Whispering Oaks in California in 2020, Cincinnati moved to quash service and the trial court granted the motion.  Whispering Oaks appealed and a different panel of this court affirmed.  (*Whispering Oaks RCF Management Co. Inc., et al. v. Cincinnati Insurance Company* (March 13, 2023, H049906) [nonpub. opn.] (*Cincinnati I*).)

Cincinnati again moved to quash in the instant lawsuit, filed by Whispering Oaks in California in 2021. Cincinnati argued that direct estoppel applied because of the prior ruling on the motion to quash in *Cincinnati I*.[1] In response, Whispering Oaks cited the new case of *Mallory v. Norfolk Southern Railway Company* (2023) 600 U.S. 122 (*Mallory*), arguing it constituted a significant change in the law regarding the exercise of personal jurisdiction, and therefore provided an exception to the application of direct estoppel. Whispering Oaks argued further that Insurance Code section 1602, part of California's statutory scheme for the registration of insurance companies, which includes a requirement for the designation of an agent for service of process in California, resulted in Cincinnati's consent to jurisdiction in California courts.

We conclude *Mallory* did not change the law in a significant manner relevant to this case because *Mallory* concerned the due process implications of a statute providing for consent to jurisdiction, while the ruling in *Cincinnati I* concluded Insurance Code section 1602 did not provide for jurisdiction in California courts over insurance companies independent of requisite minimum contacts with the state. Whispering Oaks has therefore not established any exception to the application of the doctrine of issue preclusion. We affirm the trial court's order on the motion to quash.

## I.    BACKGROUND

In 2014, Whispering Oaks filed a lawsuit against Cincinnati in Missouri. Whispering Oaks alleged separate incidents in 2010 "caused severe loss to the covered

---

[1] The parties use the term "direct estoppel," a designation that refers to issue preclusion arising when "the second action is on the same claim." (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997.) Courts "now refer to 'claim preclusion' rather than 'res judicata' [citation], and use 'issue preclusion' in place of 'direct or collateral estoppel. [Citations.]' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326, fn. omitted.) In our analysis we therefore refer to the doctrine of "issue preclusion." However, when describing the contentions of the parties in the trial court and in their appellate briefs, we use the term "direct estoppel" to accurately reflect their positions and the appellate record.

property and business," and, "[i]n addition, the property was subject to vandalism [and] employee theft." Whispering Oaks submitted a statement of proof of loss to Cincinnati, but Cincinnati refused to pay under Whispering Oaks' insurance policy. The complaint included causes of action for breach of contract and vexatious failure to pay. The court dismissed the case with prejudice in October 2015 for failure to prosecute.

In 2020, Whispering Oaks filed another lawsuit against Cincinnati, this time in California, based on the same allegations as those from the Missouri case and again including causes of action for breach of contract and vexatious refusal to pay. In a first amended complaint, Whispering Oaks added a third cause of action, for bad faith – breach of covenant of good faith and fair dealing. As it had before, Whispering Oaks alleged it had a property and business insurance policy underwritten by Cincinnati. Whispering Oaks again alleged Cincinnati failed to make payments under the policy.[2]

In March 2021, the action was dismissed by the court for Whispering Oaks' failure to appear at an order to show cause hearing. The court granted Whispering Oaks' motion to vacate the dismissal in August 2021.

In March 2022, the trial court heard a motion to quash service of the first amended complaint and demurrer to the first amended complaint. Cincinnati brought the motion to quash on the ground that the court did not have " 'jurisdiction to hear the present matter because [Cincinnati] does not have the requisite minimum contacts with California.' " The court granted the motion to quash and therefore found the demurrer to be moot.

Whispering Oaks appealed and a different panel of this court affirmed the order in *Cincinnati I*. Among the arguments made in that appeal, and relevant to this appeal, Whispering Oaks argued that the trial court has personal jurisdiction over Cincinnati

---

[2] Among its allegations, Whispering Oaks alleged that Missouri law applied to the California lawsuit, stating: "The subject policy was negotiated and contracted in Missouri to insure Missouri risk for Missouri property, and as such Missouri law applies to the claims herein."

pursuant to Insurance Code section 1602, which states: "Any notice provided by law or by a policy, and any proof of loss, summons or other process may be served on such agent in any action or other legal proceeding against the insurer, and such service gives jurisdiction over the person of such insurer." (Ins. Code, § 1602.) In the discussion of that argument, our Court stated: "We do not read Insurance Code section 1602 as conferring personal jurisdiction over insurance companies merely through service on their registered agents, independent of whether the companies otherwise have the requisite minimum contacts with California. Whispering Oaks has not identified any authority supporting its interpretation of Insurance Code section 1602, and we are not aware of any." (*Cincinnati I, supra,* H049906 at p. 22.)

On May 28, 2021, Whispering Oaks filed a verified complaint in this action, setting forth causes of action for: (1) breach of contract; (2) vexatious refusal to pay; (3) bad faith – breach of covenant of good faith and fair dealing; (4) breach of confidentiality; (5) fraud and deceit; and (6) violation of California unfair competition law.[3] Although Whispering Oaks provided additional details and causes of action in this complaint compared to the pleadings in the previous California lawsuit, the claims were once again based on Cincinnati's failure to pay under the insurance policy for the 2010 incidents. Whispering Oaks did not serve the summons and complaint on Cincinnati until March 20, 2024.

On April 19, 2024, Cincinnati moved to quash service of summons for lack of jurisdiction and to dismiss the action. Cincinnati argued Whispering Oaks' lawsuit was barred by direct estoppel due to the ruling on the motion to quash in *Cincinnati I*. Cincinnati also moved to dismiss Whispering Oaks' complaint for failure to timely serve

---

[3] As it did in the other California lawsuit, Whispering Oaks alleged: "The insured premises and insured risk being in Missouri, the contract having been issued under Missouri law, pursuant to California Choice of Law rules, Missouri law governs the interpretation and construction of the policy and the claims herein."

the complaint.  The trial court granted the motion to quash based on the doctrine of direct estoppel, and declined to address the motion to dismiss for failure to serve the complaint.

Whispering Oaks timely appealed.

## II.  DISCUSSION

### A.  *Legal Principles*

"Preclusion comes in two main forms:  claim preclusion and issue preclusion. [Citation.]  As the names suggest, claim preclusion prevents relitigation of entire claims (or 'causes of action') [citation], while issue preclusion prevents relitigation of specific issues [citation]."  (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323.)

The common law doctrine of issue preclusion "is 'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." ' [Citation.]  The doctrine ' "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation. [Citation.]" ' " (*People v. Strong* (2022) 13 Cal.5th 698, 715-716 (*Strong*).)  "As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled.  First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding.  Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citation.]  And while these threshold requirements are necessary, they are not always sufficient:  'Even if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties.  [Citations.]" (*Id*. at p. 716.)  "[O]ne well-settled equitable exception to the general rule holds that

5

preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue." (*Id*. at p. 702.)

**B.      *Issue Preclusion***

At the outset, we note Whispering Oaks expressly concedes the prior decision in *Cincinnati I* met all requirements for the application of issue preclusion because it "decided the issue of personal jurisdiction over Cincinnati in California pursuant to the 'minimum contacts' analysis." Whispering Oaks argues the recent decision of the U.S. Supreme Court in *Mallory* opened a door for a state "to exercise jurisdiction over a foreign business based on consent by registration," and this constitutes a significant change in the law, which is an exception to issue preclusion that prohibits its application for reasons of equity as set forth in *Strong*. Therefore, whether issue preclusion applies hinges on whether *Mallory* changed the law in a manner that is material here. We conclude it did not.

In *Mallory*, the U.S. Supreme Court addressed the question of whether a plaintiff residing in Virginia could maintain a lawsuit in Pennsylvania against his former employer, a corporation incorporated and headquartered in Virginia. (*Mallory*, *supra*, 600 U.S. at p. 126.) The plaintiff had moved to Pennsylvania for a period before returning to Virginia. (*Ibid*.) The plaintiff argued in Pennsylvania state court that "Pennsylvania requires out-of-state companies that register to do business in the Commonwealth to agree to appear in its courts on 'any cause of action' against them. [Citations.]" (*Id*. at p. 127.) The Pennsylvania Supreme Court acknowledged that its statutes, unlike those of its sister states, expressly provided "that qualification as a foreign corporation constitutes a sufficient basis to allow a court to exercise general jurisdiction over a foreign corporation." (*Mallory v. Norfolk Southern Railway Co.* (Pa. 2021) 266 A.3d 542, 564 and fn. 17.)[4] Despite its acknowledgment that Pennsylvania statutes

---

[4] Because its statutes specifically allowed for a basis of asserting general jurisdiction over foreign corporations registered in Pennsylvania, the Pennsylvania

authorized the exercise of jurisdiction under the facts of the case, the Pennsylvania Supreme Court held the plaintiff "could not invoke that law because it violates the Due Process Clause. [Citation.]" (*Mallory*, *supra*, 600 U.S. at p. 127.) The U.S. Supreme Court noted a split of authority between the Pennsylvania Supreme Court and the Georgia Supreme Court, "which had recently rejected a similar due process argument from a corporate defendant[] [citations]," and agreed to hear the case to "decide whether the Due Process Clause of the Fourteenth Amendment prohibits a State from requiring an out-of-state corporation to consent to personal jurisdiction to do business there. [Citation.]" (*Ibid*., fn. omitted.) Ultimately, the Supreme Court held the question had been "resolved more than a century ago in [*Pennsylvania Fire Ins. Company of Philadelphia v. Gold Issue Mining & Milling Company* (1917) 243 U.S. 93]," and that "suits premised on these grounds do not deny a defendant due process of law." (*Mallory*, *supra*, 600 U.S. at pp. 146, 135.)

Whispering Oaks relies entirely on *Mallory* as a significant change in the law to justify the nonapplication of issue preclusion in the case before us. But neither *Mallory*'s discussion nor its conclusion are relevant here. *Mallory* turned entirely on whether a statute that no party or court disputed provided a basis for exercising jurisdiction was in violation of the due process clause. The Pennsylvania statute at the center of *Mallory* stated, in relevant part: "When jurisdiction over a person is based upon this section any cause of action may be asserted against him, whether or not arising from acts enumerated in this section." (42 Pa. Cons. Stat., § 5301, subd. (b).) In contrast, the California statute relied on by Whispering Oaks to contend that a California court can assert jurisdiction over Cincinnati is Insurance Code section 1602, which provides for the effect of service on an "agent for service of process" designated by a foreign insurer in California. As stated previously, that statute states in its entirety: "Any notice provided by law or by a

---

Supreme Court noted that "the precise issue presented in this appeal may be peculiar to Pennsylvania." (*Mallory v. Norfolk Southern Railway Co*., *supra,* 266 A.3d at p. 564.)

policy, and any proof of loss, summons or other process may be served on such agent in any action or other legal proceeding against the insurer, and such service gives jurisdiction over the person of such insurer." (Ins. Code, § 1602.)

In the prior appeal decided by our Court regarding the motion to quash in *Cincinnati I*, Whispering Oaks made the same argument that "because Cincinnati operates in, and has an agent for service of process in California, service of the summons to that agent operated as consent to personal jurisdiction in this case." With regard to that argument, our Court stated: "We do not read Insurance Code section 1602 as conferring personal jurisdiction over insurance companies merely through service on their registered agents, independent of whether the companies otherwise have the requisite minimum contacts with California. Whispering Oaks has not identified any authority supporting its interpretation of Insurance Code section 1602, and we are not aware of any." (*Cincinnati I, supra*, H049906 at pp. 30-32.) The decision turned not on due process, but on whether section 1602 provides an independent basis for personal jurisdiction. To be clear, *Mallory* discussed and decided whether a statute pursuant to which a corporation consents to jurisdiction violates due process; our Court's prior decision discussed and decided whether section 1602 provides for such consent independent of minimum contacts with the state of California. *Mallory*'s due process discussion and conclusion therefore does not constitute any significant change in the law that merits revisiting our Court's prior decision because *Mallory* has no impact on the reasoning and outcome of that decision.

Accordingly, for the reasons discussed, we conclude *Mallory* does not change the law in a way that results in an exception to the application of the doctrine of issue preclusion here. In light of this conclusion, we do not reach the parties' arguments regarding the meaning of Insurance Code section 1602, an issue resolved in *Cincinnati I*.

8

### III.   DISPOSITION

The trial court's order is affirmed.  Costs on appeal are awarded to Cincinnati Insurance Company.

_____
Greenwood, P. J.

WE CONCUR:

_____
 Grover, J.

_____
 Wilson, J.

H052620 Whispering Oaks Residential Care Facility v. Cincinnati Insurance Co.