Filed 4/5/23  Newman v. Torres CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ERIC NEWMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>NESTOR ALFREDO TORRES et al.,<br><br>    Defendants and Respondents. | B317183<br><br>(Los Angeles County<br> Super. Ct. No. 19STCV36469) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Timothy P. Dillon, Judge.  Affirmed.

Peter Borenstein for Plaintiff and Appellant.

Collins + Collins, Tomas A. Guterres and Robert R. Yap for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant Eric Newman appeals from the judgment entered in favor of defendants and respondents County of Los Angeles and Nestor Alfredo Torres. The court entered judgment for defendants after it granted their motion for summary judgment. Plaintiff also challenges two interim rulings by the court, arguing the court abused its discretion in denying his motion for sanctions and in granting defendants' motion to compel further responses to discovery.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    The Underlying Criminal Proceedings**

In October 2018, plaintiff's landlord, Aimco Properties, LP, obtained a civil restraining order against him. The landlord alleged plaintiff engaged in various improper and threatening acts at his apartment complex, including flashing a handgun, threatening to shoot employees, running naked and chasing after an employee, and spray painting "fuck Aimco" on the elevator doors. The restraining order directed plaintiff to stay at least six feet away from each of the identified Aimco employees and from otherwise harassing or stalking them. The restraining order limited plaintiff's access to the apartment complex so he could only go to his apartment and the lot where he parked his car.

On October 31, 2018, plaintiff was arrested and charged with violating the restraining order (Pen. Code, § 273.6, subd. (a)). Surveillance footage from the apartment complex showed plaintiff in the office at the complex engaged in a verbal confrontation with several of the employees protected by the restraining order.

On November 2, 2018, plaintiff was arraigned. Torres, a deputy public defender, was appointed to represent plaintiff.

2

Before the hearing, Torres spoke with plaintiff in the holding cell adjacent to the courtroom. Plaintiff was "very upset" and "yelling." Plaintiff told Torres the restraining order was invalid because he did not know the employees, and he had to go to the office to get access to his mail.

Torres entered a plea of not guilty on plaintiff's behalf and told the court that plaintiff needed to pick up a key being held in the front office so he could get his mail, but the restraining order prevented him from doing so. Torres asked the court to modify the order to permit plaintiff to retrieve his belongings. The People did not object to the proposed modification and did not oppose plaintiff's release on his own recognizance (O.R.) so long as he complied with the terms of the restraining order. Plaintiff told the court he understood the order but did not think it was fair.

After plaintiff had been returned to the holding cell pending his release, the court and counsel had further discussions on the record. The court explained it did not believe it had the authority to modify the civil restraining order but proposed issuing a similar criminal order with the requested modification. Plaintiff was brought back into the courtroom and he conferred off the record with Torres. Torres then asked the court for more time to speak with plaintiff in private outside the courtroom.

Torres and plaintiff returned to the holding cell. Plaintiff was "very aggressive" and angry with Torres. He repeatedly told Torres the restraining order did not apply to him because he was a famous celebrity, he was going to sue everybody including the judge, and he did not believe Torres was a real lawyer.

Torres returned to the courtroom, concerned about plaintiff's behavior. He conferred with a senior deputy public

3

defender in the courtroom about whether he should declare a doubt as to plaintiff's competence. The senior colleague agreed with Torres that he should declare a doubt. Torres did not ask the court to bring plaintiff from the holding cell back into the courtroom. Torres advised the court he tried to explain the proposed criminal restraining order to plaintiff to no avail. He told the court plaintiff "was unable to comprehend what I was explaining to him or give me any kind of indication that he understood the proceedings, the conditions of the restraining order. [¶] At this time, I would ask that the court declare a doubt" pursuant to Penal Code section 1368.

The court declared a doubt, suspended the criminal proceedings, and transferred defendant to mental health court for an examination and hearing. The prosecutor withdrew his consent to an O.R. release. The court set bail at $20,000. Plaintiff remained in custody.

On November 27, 2018, plaintiff was examined by Dr. Sharon Guo, a court-appointed psychiatrist. Dr. Guo reported that plaintiff was uncooperative, frequently rambled off-topic and needed redirection, and suffered delusions. In Dr. Guo's opinion, plaintiff was not competent to stand trial. She believed plaintiff would benefit from medication, and he likely could be restored to competency. The court, relying on Dr. Guo's report, found plaintiff was incompetent to stand trial.

Plaintiff was allowed to address the court. He said he was competent to proceed with his trial, and he did not understand why he was being sent to a psychiatric ward over a misdemeanor "dispute over rent." The court explained it saw things differently. The court also told plaintiff that if his treatment went well, it was possible he could return for a new competency assessment

4

within a few weeks.  The court then ordered plaintiff committed to the authority of the Los Angeles County Health Agency.

On January 8, 2019, plaintiff was examined by Dr. Marc Cohen, a court-appointed psychiatrist.  Based on Dr. Cohen's report, the court found plaintiff's competency had been restored, and he was competent to stand trial.  The criminal proceedings were reinstated.

On January 22, 2019, plaintiff, represented by deputy public defender Mark Russ, pled no contest to violating the restraining order.  Plaintiff signed a misdemeanor waiver of rights and plea form.  The court accepted plaintiff's plea and waivers on the record.  The court found a factual basis for the plea and found defendant guilty as charged.  The court placed plaintiff on summary probation for 36 months, sentenced him to 150 days in county jail, and credited him with 150 days of custody credits (75 actual, plus 75 conduct).  The court ordered plaintiff to comply with the terms of the restraining order.

## 2. Plaintiff's Civil Action

In October 2019, plaintiff filed this action for damages.  The original complaint stated a professional negligence cause of action against Torres and a cause of action for vicarious liability against the County as Torres's employer.  The County filed a motion for judgment on the pleadings which the court denied. The court granted plaintiff leave to file a first amended complaint adding a cause of action against the County for failure to train pursuant to title 42 U.S.C. § 1983.

Defendants filed another motion for judgment on the pleadings, challenging only the first and second causes of action. Plaintiff opposed the motion and also filed a motion for sanctions, arguing that defendants had filed an improper motion for reconsideration of its earlier motion for judgment on the

pleadings in violation of Code of Civil Procedure section 1008. The court denied defendants' motion for judgment on the pleadings and also denied plaintiff's motion for sanctions.

In March 2021, the court granted defendants' motion to compel plaintiff to provide further responses to their third set of requests for documents. The court ordered plaintiff to serve further responses, withdrawing all objections except those based on privilege, and to the extent plaintiff asserted any privilege, he was to produce a privilege log.

### 3.    Defendants' Summary Judgment Motion

Defendants submitted declarations from both percipient and expert witnesses, and numerous exhibits, including records and transcripts from the underling criminal proceedings in support of their motion for summary judgment. Defendants' evidence made a prima facie case there was no material dispute whether Torres breached the professional standard of care.

Torres attested to the circumstances that led him to genuinely doubt plaintiff's competence to stand trial.

Mia Yamamoto submitted an expert declaration in which she described her experience as a criminal defense attorney since 1974 and attested to the standard of care for criminal attorneys declaring a doubt as to a client's competence. Ms. Yamamoto stated her opinion that Torres did not breach his duties to plaintiff, explaining an attorney has an obligation to request the court to declare a doubt once that attorney has a reasonable belief the client lacks the mental competence to understand the nature of the criminal proceedings and assist in the defense.

Dr. Guo, the court-appointed psychiatrist who first examined plaintiff after the court declared a doubt, also provided an expert declaration. Dr. Guo is an assistant clinical professor at the University of Southern California Keck School of Medicine.

6

She attested to her examination of plaintiff on November 27, 2018. She described the bases for her opinion that plaintiff was not competent to stand trial, and her opinion his mental condition would benefit from medication. Her written report was attached as an exhibit.

Michael Suzuki testified in his declaration he has been a deputy public defender since 1985 and the division chief for the Employee Relations Division since 2014. He explained his job responsibilities and his personal knowledge regarding the business records kept by the Public Defender's Office pertaining to clients whose competency has been called into question. Based on his review of those records, he said that during the five-year period before plaintiff's arraignment on November 2, 2018, the Public Defender's Office represented 21,151 adult clients as to whom a deputy public defender and the court had declared a doubt pursuant to Penal Code section 1368. During that time, no one had filed any government claims, complaints or civil actions with the County alleging any impropriety arising from a deputy public defender declaring a doubt.

Ramiro Jacinto testified in his declaration he was appointed to represent plaintiff after plaintiff was transferred to mental health court. Mr. Jacinto has worked for the Public Defender's Office since 1983 and has been assigned to the mental health unit since 2008. Mr. Jacinto represented plaintiff at the hearing on November 27, 2018, when the court formally declared a doubt based on Dr. Guo's report, and also at the hearing on January 8, 2019, when the court ordered the resumption of criminal proceedings based on Dr. Cohen's finding that plaintiff's competency had been restored.

Mark Russ, another attorney in the Public Defender's Office, represented plaintiff in the criminal proceedings after his

7

competency had been restored, including the hearing in January 2019 at which plaintiff pled no contest to the misdemeanor charge of violating the restraining order.

Verah Bradford and Traci Blackburn, attorneys who each have over 25 years of experience at the Public Defender's Office, attested to the training provided to new attorneys and described the in-house courses provided for deputy public defenders on issues related to mental health, competency to stand trial, and the use and application of Penal Code section 1368. Copies of some of the training materials used during the programs were attached as exhibits.

### 4. Plaintiff's Opposition

Plaintiff opposed defendants' motion by objecting to defendants' evidence and arguing that defendants did not discharge their movants' burden. Plaintiff did not present a declaration attesting to any facts, nor did he present any expert testimony. In his opposing separate statement, plaintiff admitted only one fact—that it was undisputed the court had declared a doubt as to his competency to stand trial (fact No. 5)—and purported to dispute three facts, but the evidence plaintiff cited in his separate statement did not contradict defendants' evidence.

### 5. The Court's Ruling

The hearing on defendants' motion was held August 31, 2021. After entertaining argument, the court took the matter under submission. Thereafter, the court issued its written order granting defendants' motion. Judgment was entered in defendants' favor on September 27, 2021.

This appeal followed.

8

**DISCUSSION**

**1. The Summary Judgment Motion**

A defendant moving for summary judgment must show either that an essential element of the plaintiff's cause of action cannot be established, or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (o).) "Summary judgment is appropriate where 'all the papers submitted show that there is no triable issue as to any material fact.'" (*Garcia v. D/AQ Corp.* (2020) 57 Cal.App.5th 902, 906 (*Garcia*); see also § 437c, subd. (c).) Summary judgment is no longer considered a disfavored remedy but rather, an effective way to weed out those cases for which trial on the merits is not warranted. (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)

We independently review the trial court's decision granting summary judgment, considering all the evidence presented in the moving and opposing papers, except that to which objections were made and sustained. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39; *Garcia*, *supra*, 57 Cal.App.5th at p. 907.)

**a. Plaintiff's evidentiary objections were properly overruled.**

On appeal, plaintiff claims the trial court erred in overruling his objections to the declarations of Ms. Yamamoto, Mr. Suzuki, Dr. Guo, Mr. Jacinto and Mr. Russ. We find the trial court did not abuse its discretion in overruling plaintiff's objections.

Plaintiff objected to certain paragraphs of Ms. Yamamoto's declaration on the grounds she was not disclosed as an expert and was not qualified to render an opinion. Both objections are without merit. At the time defendants' motion was filed, an expert exchange had not yet occurred, so Ms. Yamamoto had not been formally designated. She was subsequently timely disclosed

9

as an expert. Moreover, Ms. Yamamoto's declaration provides ample detail regarding her experience as a criminal defense attorney for over four decades and a sufficient basis to support her qualification to render an opinion on the standard of care as it applies to this case.

Plaintiff objected to certain paragraphs of Mr. Suzuki's declaration on the grounds he improperly relied on and recounted the contents of inadmissible hearsay documents. Mr. Suzuki's testimony was admissible under Evidence Code section 1523, subdivision (d) which provides that "[o]ral testimony of the content of a writing is not made inadmissible by subdivision (a) if the writing consists of numerous accounts or other writings that cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole." The court was justified in admitting Mr. Suzuki's testimony under section 1523, subdivision (d) as it was not feasible for the voluminous records spanning five years which he reviewed to be admitted into evidence.

Plaintiff objected to certain paragraphs of Dr. Guo's declaration on the grounds of relevance. Plaintiff argued Dr. Guo's opinion of his mental competence three weeks after Torres declared a doubt to the court is not relevant. The trial court found Dr. Guo's testimony to be probative, even if not dispositive, of the issue of plaintiff's mental competence and therefore relevant evidence that bolstered Torres's conduct in declaring a doubt. Obviously, Dr. Guo's opinions were highly relevant.

Plaintiff objected to the entire declaration of Mr. Jacinto on the grounds it was based on inadmissible hearsay and was irrelevant. Mr. Jacinto testified to facts based on his own personal knowledge, not hearsay. Plaintiff's additional objection

10

that all of his testimony was irrelevant is also without merit. His testimony was relevant to provide context for how the criminal proceedings against plaintiff were resolved, which was relevant to several of the bases upon which defendants sought judgment. The same is true as to plaintiff's objection to the relevance of certain paragraphs of Mr. Russ's declaration.

> **b.** **Professional negligence and vicarious liability (first & second causes of action).**

Breach of duty is an essential element of plaintiff's first cause of action for professional negligence. (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536.) To determine whether a breach of a professional duty has occurred, expert testimony on the standard of care is ordinarily required. "In negligence cases arising from the rendering of professional services, as a general rule the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts. Only their testimony can prove it, unless the lay person's common knowledge includes the conduct required by the particular circumstances." (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239; *O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 236 ["expert evidence is required to establish legal malpractice"].)

Here, the only allegations of breach concern Torres declaring a doubt as to plaintiff's competency. Plaintiff alleged in the first amended complaint that Torres declared a doubt without any reasonable basis for doing so. But plaintiff offered no evidence whatsoever—neither lay nor expert testimony—to support these allegations.

Defendants presented solid expert testimony on the standard of care from Ms. Yamamoto, who was qualified to render an opinion based on her experience as a criminal defense

11

attorney for over 40 years, including more than a decade at the Public Defender's Office. In her opinion, Torres's representation of plaintiff met the standard of care. She said it was Torres's responsibility to report his concerns about plaintiff's competence to the court in order "to prevent criminal proceedings from going forward while [plaintiff] was incompetent to proceed." Her declaration provides a reasoned explanation connecting the underlying facts to her analysis of the issues and her ultimate opinion that Torres did not breach his duties to plaintiff by declaring a doubt about his competency.

Ms. Yamamoto's testimony was bolstered by Torres's declaration explaining his interactions with plaintiff and what led him to form a genuine belief that plaintiff was unable to meaningfully comprehend the charges against him and assist in his defense. Torres conferred with a colleague who agreed with his assessment before he reported his concerns to the court.

Defendants discharged their initial movants' burden to show that an essential element of plaintiff's cause of action for professional negligence could not be established. Plaintiff did not offer any evidence, expert or otherwise, to raise a triable issue as to whether Torres breached the professional standard of care. The motion was therefore properly granted as to the first cause of action for professional negligence. It was also properly granted on the second cause of action against the County which was based solely on its vicarious liability as Torres's employer. We need not address the other contentions regarding these two causes of action.

### c. Failure to train (third cause of action).

Failure to train is one type of federal civil rights claim that can be stated under title 42 U.S.C. § 1983 against a municipality. "In limited circumstances, a local government's decision not to

train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." (*Connick v. Thompson* (2011) 563 U.S. 51, 61.)  To establish such a claim, the municipality's failure to train must rise to the level of deliberate indifference.  "Only then 'can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.' " (*Ibid.*; accord, *Squires v. City of Eureka* (2014) 231 Cal.App.4th 577, 597 [elements of failure to train claim under federal civil rights statute includes " 'a pattern of similar violations' " that put the municipality on notice that its " 'inadequate training was likely to result in a deprivation' " of a constitutional right].)

Plaintiff's failure to train claim was based on the allegation that the County failed to have a training program in place to accurately instruct its public defenders on declaring a doubt as to a client's competence, and further, that the County's poorly trained attorneys misapplied the standards for declaring a doubt.

Defendants presented evidence from Ms. Blackburn and Ms. Bradford, two experienced attorneys in the Public Defender's Office, who attested to the training provided to newly hired attorneys, which included training on mental competency issues. Defendants also presented evidence through the testimony of Mr. Suzuki that in the five years preceding plaintiff's arraignment in 2018, the County received no similar claims or complaints despite representing more than 20,000 adult clients as to whom a doubt was declared.  Ms. Yamamoto testified Torres correctly fulfilled his professional duties (and did not misapply the standards) when he declared a doubt.

13

Defendants' evidence in support of the summary judgment is consistent with the law, which establishes that it is a violation of the constitutional right to due process to require a mentally incompetent criminal defendant to stand trial. (*People v. Rodas* (2018) 6 Cal.5th 219, 230; accord, *People v. Mickel* (2016) 2 Cal.5th 181, 194.) The timely determination of a "defendant's competence to stand trial goes to the fundamental integrity of the court's proceedings." (*People v. Harris* (1993) 14 Cal.App.4th 984, 994.) If, at any time during criminal proceedings, a defense attorney forms a bona fide doubt about his client's competence, the attorney must raise the issue with the court to ensure that the client's due process rights are not violated. This is so even if the client is convinced he is competent to proceed. (*Id.* at pp. 994–995; *id.* at p. 995 ["It would place defense counsel and the integrity of the criminal justice system in an impossible position to suggest that defense counsel must ignore his or her bona fide doubt as to the defendant's present competence, simply because the defendant is personally confident that he or she is competent."].)

Plaintiff did not offer any evidence contesting the adequacy of the County's training program for new deputy public defenders, nor any evidence the County's attorneys were declaring a doubt in a manner in violation of their clients' rights. Plaintiff argues the motion should nonetheless have been denied because the County's failure to properly train its attorneys was so glaring and obvious. Again, plaintiff's argument, without any evidentiary basis, does not create a material disputed fact.

## 2. The Sanctions and Discovery Orders

### a. The sanctions motion

Plaintiff filed a motion for sanctions pursuant to Code of Civil Procedure sections 128.7 and section 128.5 in response to

14

defendants' filing of the second motion for judgment on the pleadings. Plaintiff argued defendants' motion was frivolous and that sanctions were warranted because defendants had violated section 1008 by filing a largely duplicative motion that renewed arguments the court had already rejected when it denied defendants' first motion for judgment on the pleadings.

In denying plaintiff's motion for sanctions, the court concluded defendants' motion for judgment on the pleadings was not completely without merit, and the court was not persuaded it had been filed in bad faith or for any improper purpose.

Trial courts are vested with broad discretion to determine whether an award of sanctions pursuant to Code of Civil Procedure section 128.7 is appropriate. "Under the explicit language of section 128.7, subdivision (c), the trial court retains the discretion, upon the finding of a violation of subdivision (b), to determine whether a sanction is warranted in the first instance." (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 422.) The court is similarly vested with the discretion to determine whether sanctions are warranted under section 128.5, subdivision (a).

Plaintiff says the court abused its discretion in denying sanctions because it acknowledged defendants' motion had been an improper "second bite at the apple" and "a waste of judicial resources." While the court did make those observations about defendants' motion, it nonetheless decided to resolve the motion on the merits. The court explained that plaintiff, in amending his complaint, had "stated some additional facts which have been incorporated into the first and second causes of action and Defendants raise two issues not raised in their first motion." The court also cited a split of opinion in the Courts of Appeal about whether a party may file a demurrer or motion for judgment on

15

the pleadings to an amended pleading that raises arguments previously rejected by the trial court.

"To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice." (*Muega v. Menocal* (1996) 50 Cal.App.4th 868, 874, internal quotations omitted; accord, *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1001.) Plaintiff has not demonstrated any miscarriage of justice.

### b. The discovery motion

On March 23, 2021, the court granted defendants' motion to compel further responses to their third set of requests for documents, ordering plaintiff to serve further verified responses "that withdraw all objections except privilege objections. Plaintiff must serve a detailed privilege log that provides a description, author, recipient, date, and privilege claimed for each document that Plaintiff contends is privileged. Plaintiff must produce all documents that are responsive to these requests except those identified in the privilege log." The court denied defendants' request for monetary sanctions.

Plaintiff contends this discovery order must be reversed because the privilege log would force him to disclose information regarding how, when, and to what extent he communicated with his attorney. The contention is without merit.

The discovery motion was directed primarily at obtaining documents that supported plaintiff's damage claims—documents that would ordinarily have nothing to do with attorney-client communications. However, to the extent plaintiff contended any such documents were privileged communications with counsel, there was nothing inappropriate about the court ordering a

16

privilege log, which courts routinely order.  Plaintiff identifies no reasoned basis for reversing this discovery order.

## DISPOSITION

The judgment in favor of defendants and respondents Nestor Alfredo Torres and County of Los Angeles is affirmed.

The order denying plaintiff and appellant Eric Newman's motion for sanctions is affirmed.

The order granting Nestor Alfredo Torres and County of Los Angeles's motion to compel further responses to their third set of document requests is affirmed.

Nestor Alfredo Torres and County of Los Angeles shall recover costs of appeal.

GRIMES, Acting P. J.

WE CONCUR:

VIRAMONTES, J.

YEGAN, J.*

---

\*      Associate Justice of the Court of Appeal, Second District, Division Six, appointed by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17